PUGH et al. v. CLARK et al.

No. 12239.

Court of Civil Appeals of Texas. Galveston.

April 12, 1951.

Rehearing Denied May 3, 1951.

B. R. Reeves, of Palestine, Walace Hawkins and Roy C. Ledbetter, both of Dallas, for appellant.

Sam Holland, of Athens, Luther C. Johnston and J. D. Pickett, both of Palestine, for appellee.

CODY, Justice.

This was a trespass to try title action involving a tract of land in Anderson County, which, though slightly larger, is referred to throughout the record as consisting of 70.3 acres. The suit was instituted December 8, 1947.

The plaintiffs claimed title through D. M. Anding, who died intestate on January 16, 1923. The source of defendants' claim is J. A. Pugh and his wife, Rosa Anding Pugh, who was a daughter of the aforesaid D. M. Anding. And the said Pugh and wife claimed to have derived title in three different ways, (1) by a deed from a Negro named Burrell; (2) by adverse possession under the 3, 5, 10, and 25 year statutes of limitations, Vernon's Ann. Civ.St. arts. 5507, 5509, 5510, 5519, and also urged that rights asserted by plaintiffs were barred by the 2 and 4 year statutes of limitations, Vernon's Ann.Civ.St. arts. 5526, 5527; (3) by subrogation in that J. A. Pugh had paid off a deed of trust lien placed on the property by D. M. Anding, and other debts of the aforesaid D. M. Anding, which were entitled to priority payment out of the estate of the aforesaid D. M. Anding.

It was undisputed that D. M. Anding was the father of one son and six daughters; that two of his daughters predeceased him, but each of them left a daughter to represent her share; that two of his children, Albert and May, died after his death; both died intestate without having married. Albert died in 1935; May, on December 26, 1945. The plaintiffs that were heirs of D. M. Anding, were:

(1) Ida Clark, a daughter

(2) Louise Christian, a granddaughter, representing the interest of a deceased daughter

(3) Alma Swenson, a granddaughter, representing the interest of a deceased daughter

(4) R. V. Fitzgerald, a granddaughter, representing the interest of a deceased daughter

Each of aforesaid plaintiffs also claimed to own a distributive share of whatever interest was owned by the aforesaid Albert and May Anding, who, as stated, died unmarried and intestate after the death of D. M. Anding. The sole remaining heir of D. M. Anding was a daughter, and was married to defendant J. A. Pugh at all material times. The plaintiffs, other than those who were heirs of D. M. Anding, claimed to own oil interests in the land by virtue of conveyances from heirs of D. M. Anding, and need not be further referred to herein, as their rights depended upon whether the rights of the heirs were established as subsisting.

The defendants other than J. A. Pugh and wife, claimed oil interests under conveyances from J. A. Pugh and wife.

At the close of plaintiffs' evidence, and again at the close of all the evidence, defendants moved for a directed verdict, and, after verdict, for judgment on the verdict, and in the alternative, for judgment notwithstanding the verdict. The court, however, rendered judgment for plaintiffs, that they recover an undivided ³⁄₁₀ths of the tract, divided among plaintiffs, as follows:

(1) Ida Clark, a daughter as aforesaid, a ⅟₃₀th of the fee, and ⅟₆₀th of the oil and gas, subject to the oil, gas and mineral lease.

(2) Louise Christian, a granddaughter as aforesaid, an equal share as that awarded to Ida Clark.

(3) Alma Swenson, a granddaughter as aforesaid, an equal share as that awarded Ida Clark.

(4) R. V. Fitzgerald, a granddaughter, an undivided ⅟₁₀th, subject to the oil, gas and mineral lease.

(It is unnecessary to specify the other mineral provisions of the judgment relating to the interests which were awarded in virtue of conveyances of oil, gas and mineral rights. We also omit giving the details of the judgment with respect to the tender of contribution by plaintiffs to repayment of the debts of D. M. Anding, which were found to have been paid by defendant J. A. Pugh.)

Defendants predicate their appeal upon five points, the first of which complains of the court's refusal of defendants' motion for judgment non obstante veredicto. We overrule defendants' first point.

The jury found that D. M. Anding had acquired title to the 70.3 acre tract by adverse possession prior to his death on January 16, 1923. The other material findings of the jury (retaining the numbers of the special issues), were:

(4) That defendant J. A. Pugh, held adverse possession of the tract for a period "of ten consecutive years after January 16, 1923, and prior to December 8, 1947," (the date plaintiffs instituted suit).

(5) That said defendant's adverse possession was of such character "as would put a person of ordinary care and prudence, in the same situation as plaintiffs * * * upon notice that he, J. A. Pugh, was claiming and asserting title to all the interests in the 70.3 acre tract in controversy."

(6) That plaintiffs Ida Clark and husband had actual notice of J. A. Pugh's adverse possession and claim of ownership of all interests in this tract.

(7) That plaintiffs Louise Christian and husband also had such notice.

(8) That plaintiff Alma Swenson also had such notice.

(9) That May Anding at no time during the period from January 16, 1923, when D. M. Anding died, until her death, had sufficient mental capacity to understand the nature of bringing or defending a suit for the land.

(11) That J. A. Pugh, about February 4, 1925, paid the indebtedness of D. M. Anding, which was secured by a deed of

trust on the land, and which was dated January 10, 1921.

(12) That the reasonable cash market value of the tract of land in 1923 was $8 per acre.

(13) That such value of said tract on December 8, 1947 (date suit was filed) was $125 per acre.

(14) That such value was $450 per acre on March 21, 1950.

(15) That the amount paid on the debts of D. M. Anding by J. A. Pugh after Anding's death was $351.50.

(17) That the money secured by the deed of trust given by D. M. Anding, February 10, 1921, was used to buy necessaries for his family.

We do not understand that the defendants attack the sufficiency of the evidence to support the findings, or of the findings to support the judgment, which established the fee simple title to the tract in D. M. Anding. We understand that it is defendants' position, (1) that the court was required, under the evidence, and even under the jury's findings, to render judgment that title became vested in Pugh by ten years' adverse possession, after D. M. Anding's death; also (2) that, by virtue of Pugh's payment of the deed of trust lien, he and Mrs. Pugh became vested with title to the tract, subject to the equity of Mrs. Pugh's cotenants to contribute their respective shares within a reasonable time, which equity had become barred by limitations, or lost by laches.

We will consider first defendants' contention that the Pughs acquired title to the tract by virtue of the fact that J. A. Pugh paid the deed of trust lien upon the tract of land which was given by D. M. Anding on January 10, 1921.

■■■ It is well settled under our system of law, that the ownership of a vested interest in land cannot be abandoned. 1 Tex.Jur. 8. By paying off the indebtedness which was secured by the deed of trust, J. A. Pugh became subrogated to the rights given by the deed of trust to enforce payment of the indebtedness. It is obvious that the rights so acquired by J.

A. Pugh could be no greater than the rights he would have acquired had he taken a written transfer of the indebtedness, and lien securing its payment. And it is further equally manifest that Pugh could have acquired no greater rights by virtue of paying off such deed of trust lien indebtedness, than the owner of said indebtedness had before its payment. Such owner could not have divested the interest owned by the heirs of D. M. Anding except by foreclosure sale, either by the trustee, or by the sheriff.

■■■ The Pughs, by virtue of Mrs. Pugh being an heir of D. M. Anding, had the right to be in possession of the tract, along with the other heirs. After Pugh paid the deed of trust lien, each cotenant had the equity to discharge his or her interest in the land from said lien by paying off one-seventh of the indebtedness, as that was the interest of each heir in the tract. It is equally elementary that Pugh had, by paying the indebtedness, acquired the right to foreclose the interest owned by each cotenant, if such cotenant failed to pay his or her share of the indebtedness. It is further elementary that the right of each cotenant to contribute his pro rata share of the entire indebtedness, and obtain a release of his interest, can be lost by laches. Just how the statutes of limitations would be applied to bar the right of contribution by the cotenants of the Pughs, need not be considered.

■■■ But no matter whether the cotenants of the Pughs lost their rights of contribution by laches or by limitations, all that he or she could so lose, and all that the Pughs could gain was the cotenants' respective equities to pay off his or her share of the entire indebtedness, and thereby bring about the release of his interest in the land. For the purposes of this appeal we assume that each of Pugh's cotenants lost his right or equity of contribution. After such loss of the right of contribution, a cotenant of the Pughs could protect his or her interest from foreclosure only by paying off the balance of the unpaid indebtedness, and then look to the other cotenants, exclusive of the Pughs, for con-

tribution. It is not pretended that the Pughs foreclosed the deed of trust lien. However, the Pughs, after they acquired the deed of trust lien, have remained in possession so as to keep the lien alive. Jasper State Bank v. Braswell, 130 Tex. 549, 111 S.W.2d 1079, 115 A.L.R. 329.

As supporting their contention that the title of their cotenants passed to the Pughs by virtue of the payment by the Pughs of the deed of trust lien, or by virtue of the loss of their cotenants' right of contribution, defendants rely on such rulings as were made in Johnson v. Smith, 115 Tex. 193, 280 S.W. 158; and Myers v. Crenshaw, Tex.Civ.App., 116 S.W.2d 1125, affirmed by the Supreme Court, in 134 Tex. 500, 137 S.W.2d 7. Such authorities are not in point.

In the Johnson case, one Sherrod conveyed to Elymas Johnson a tract of land, retaining a vendor's lien and the "superior" title to secure the payment of purchase money notes. Thereafter Elymas Johnson, who was old when he made the purchase, found that he was unable, because of feebleness, to cultivate the land, and he was in danger of losing the land, because he was dependent on making crops to get the money to pay the purchase money notes. He and his wife then orally agreed with certain of his sons that if they would cultivate the land and pay off the notes, that they should have the land. After the death of Elymas Johnson, intestate, the other children brought suit to recover as heirs of their deceased father. Said the Supreme Court, speaking through Judge Greenwood: "With the title, legal and equitable, in Sherrod (Elymas Johnson's vendor), and not in Elymas Johnson, at the date of the agreement with plaintiffs in error, the deed of Sherrod was all that was required to comply with the statute of frauds. (Authority.) Elymas Johnson, being without title but holding a mere contract for a title conditioned on payment of the notes, and being unable to pay, could agree by parol for others to have the benefit of his contract. (Authorities.) * * Elymas was not contracting away title existing in himself." [115 Tex. 193, 280 S.W. 160.]

The opinion of the Supreme Court in the case of Myers v. Crenshaw, supra, is briefer with respect to the points of that case which are here relevant, than that of the Court of Civil Appeals. It appears therefrom that one Rufus Jones bought a 25 acre tract of land for the consideration of $625, of which $150 was paid in cash. Then he and his wife, Arah, were divorced. At the time of the divorce, while the "superior" title remained in their vendor, to secure the payment of the notes, Arah stated she was not interested in the land, and would not assist in paying off the notes. Thereafter Rufus Jones remarried, paid off the notes, and later, when the land became valuable as prospective oil bearing land, Rufus and his second wife conveyed oil interests to others. In subsequent litigation Arah Jones, the divorced wife, intervened and sought to recover an undivided half interest in the land. The Supreme Court at page 10 of 137 S.W.2d said that the Court of Civil Appeals "held that by reason of the facts so found (by the jury) and other facts, which were undisputed, Arah Jones abandoned her title and was estopped to assert it. *To that conclusion of the Court of Civil Appeals no error has been assigned.*" (Emphasis supplied.)

There was no occasion in the Myers case to determine whether Rufus and Arah Jones, at the time of their divorce, owned the title, or merely a contract right to acquire the title. The Supreme Court made it clear that its jurisdiction had not been invoked with respect to the ruling that Arah had *abandoned* her *title.* As noted above, a vested interest in land cannot be abandoned. The Court of Civil Appeals should have held that, at the time of the divorce, the title to the 25 acre tract remained in the vendor of Rufus and Arah Jones, and what they had was a contract to acquire the title. A contract right to acquire a title can be abandoned. It is done every day. The only basis for the defendants to contend that the Pughs acquired the title of their cotenants, is that they acquired same by adverse possession.

The plaintiffs' theory was that upon the death of D. M. Anding, each of his heirs

inherited an undivided ⅐th, or 6/42nds interest in the tract; that upon the death of Albert Anding, intestate, his 6/42nds passed to his heirs, being his sisters or representatives of his sisters, so that, upon Albert's death, each of his surviving six heirs took an undivided 1/42nd, which, added to 6/42nds each inherited from D. M. Anding, made a total of 7/42nds or ⅙th. The plaintiffs claimed that upon the death of May Anding, her ⅙th went equally to her five heirs, so that each survivor owned a total ⅙th plus 1/30th or an undivided ⅕th.

◼ The only plaintiff that recovered an undivided ⅙th was R. V. Fitzgerald, who was born August 9, 1922. Her mother predeceased D. M. Anding. So limitations began to run against her and in favor of the Pughs on August 9, 1943. Plaintiffs had pled her disability of minority, as against the pleas of limitations pled by defendants. There was no error in the court's ruling that R. V. Fitzgerald had not been divested of any interest she inherited from her grandfather, or any interest she may have inherited from her uncle, or from her aunt.

◼ The burden was on defendants to prove that Albert, who, as aforesaid, was a cotenant with the Pughs, had notice brought home to him that the Pughs were holding adversely to him. There was evidence to the effect that Albert was an epileptic, and shortly after the Pughs went into possession, Albert was removed, or he moved, to an institution in west Texas. There is no evidence that he ever returned at any time to the community. The jury's finding that the occupancy by the Pughs was sufficient to give notice that it was adverse, was not in our opinion sufficient, under the evidence, to establish notice was brought home to Albert. The letter from Albert to a daughter of the Pughs shows that he knew the Pughs were occupying the tract. Indeed the evidence shows that he knew that fact before he moved from the community. But there is nothing in the letter to show that such occupancy was hostile. So the 1/42nd interest which R. V. Fitzgerald inherited from her uncle was not shown to have been divested—that is, there is no showing that limitations had been put into motion against Albert, and no finding to such effect.

◼ We have concluded that the finding by the jury that May did not have the mental capacity to understand the nature of bringing or defending a suit for land was a finding that she was of unsound mind. See Swink v. City of Dallas, Tex.Com. App., 36 S.W.2d 222. So the disability of May Anding prevented her from being divested of her interest. As her death occurred in December, 1945, her heirs each inherited a 1/30th.

We overrule defendants' second point which relates to the matter of the tender of contribution by plaintiffs of their share of the deed of trust lien indebtedness. We have already ruled that plaintiffs lost their right of contribution, so that each plaintiff, in order to protect her interest in the land would have to pay off the entire indebtedness, less the Pugh share, and look to their cotenants for contribution, as the lien had been kept alive, and the Pughs could have foreclosed it. We understand from the record that plaintiffs have paid into court the entire amount of such unpaid lien indebtedness.

We have considered, and we overrule defendants' other points as not presenting any reversible error. The court excluded evidence of the payment by Pugh of $51, as the funeral expenses of D. M. Anding. Such expenses could have been established against the estate. But defendants were not seeking to recover same. No doubt the Pughs became subrogated to tax liens upon the payment of the taxes on the land, but defendants did not seek to recover the amount thereof, nor to enforce the liens.

The judgment is affirmed.