Lavina ROGERS, et al., Appellants,

v.

RICANE ENTERPRISES, INC., et al., Appellees,

No. 07–86–0267–CV.

Court of Appeals of Texas, Amarillo.

Oct. 14, 1987.

Rehearing Denied Nov. 13, 1987.

Law Offices of Robert P. Baxter, Jr., P.C., Robert P. Baxter, Jr., Guittard, Hy-

**392**

den & Guittard, Joe Bailey Hyden, Dallas, for appellant.

Pettit & Martin, Walter G. Pettey, III, Dallas, McCleskey, Harriger, Brazill & Graf, Dennis Burrows, Lubbock, Kirklin & Boudreaux, Thomas W. Burch, III and Glen M. Boudreaux, Houston, Tabor & Tabor, Warren G. Tabor, Jr., Levelland, Bullock, Scott, Neisig & Owens, G. Medferd Owen, Jr. and Tom Scott, Midland, Pride Pipeline Co., Dave Caddell and Janis Reinken, Abilene, for appellees.

Before REYNOLDS, C.J., and DODSON and COUNTISS, JJ.

REYNOLDS, Chief Justice.

Appellants,[1] plaintiffs in the court below, appeal from a take-nothing summary judgment rendered in their trespass to try title and conversion action against appellees,[2] some of the defendants below, to recover the working mineral interest under an assignment of an oil and gas lease insofar as it covers·a 329.3–acre tract out of the approximately 7,893 acres in the basic lease. By their action, appellants claim entitlement to all rights held by Western Drilling Company under the assignment on the ground that the assignment is still valid and in full force and effect.

 The trial court granted appellees' motions for summary judgment, one of the multiple grounds for which was that Western's interest terminated and reverted prior to the time appellees began production. If the ground is sustainable, appellants could not validly claim any interest through Western. We will affirm the judgment on this ground.[3]

On 31 May 1937, Carrie Slaughter Dean, lessor, entered into an oil and gas lease with P.N. Wiggins, lessee. The lease covered approximately 7,893 acres of land in Cochran County, including the 329.3–acre tract to which this appeal pertains. The lease included a habendum clause as follows:

TO HAVE AND TO HOLD the same for a term of ten (10) years from this date, hereinafter referred to as the primary term, and as long thereafter as oil or gas or casinghead gas, or either or any of them, is produced therefrom, or as much longer thereafter as the lessee in good faith shall conduct drilling operations thereon and should production result from such operations, the lease shall remain in full force and effect as long as oil or gas or casinghead gas, shall be produced therefrom.

The instrument further provided that after expiration of the primary term, upon cessation of production, the lessee would have 60 days to commence drilling a new well, commence deepening the existing well, or attempt to restore production from the existing well. If commenced and prosecuted with reasonable diligence within this period, the lease would continue in effect as long as production continued. The assignment of the lease in whole or in part was expressly allowed.

Production was achieved on the leased premises. The Dean lease was eventually

---

1. Appellants, suing as shareholders and as successors in interest of the disfranchised Western Drilling Company, Inc., are Lavina Rogers, K.W. Cecil, Jr., E.W. Cecil, Linda K. Cecil Edwards, Michael Cecil, Norma Jean Rogers Choate, John Campbell Rogers, and Robert Richard Rogers.

2. Appellees—the working interest and overriding royalty interest owners in, and purchasers of production from, the 329.3–acre mineral leasehold that forms the basis for this litigation—are Ricane Enterprises, Inc., Cordova Resources, Argonaut Energy Corporation, Pride Pipeline, Amoco Production Company, Torreyana Oil Company, Calvin Ortega, J.C. Craft, Mobile Oil Corporation, and Southern Union Refining Company.

3. Where the defendant in a summary judgment proceeding offers more than one reason why summary judgment should be granted, and the court grants the motion "on the grounds urged," as the trial court stated, or fails to state the reason for granting the motion, the action taken by the trial court should be affirmed if any theory offered is meritorious. *Tijerina v. Wennermark*, 700 S.W.2d 342, 347 (Tex.App.—San Antonio 1985, no writ). Thus, although appellees offered multiple grounds for summary judgment, for purposes of this appeal it suffices to address only the sustainable ground mentioned.

assigned to Superior Oil Company. Subsequently, on 1 June 1949, Superior assigned the lease above a depth of 5200 feet on the tract in question, on which there was no production, to Western Drilling Company. Provisions in the Superior-to-Western assignment recited that:

NOW, THEREFORE, for an [*sic*] in consideration of the premises, and of the covenants and conditions herein to be kept and performed by the parties hereto, Superior does hereby sub-let, assign and set over unto Western, upon the conditions herein after set forth ... that certain oil and gas lease....

\* \* \* \* \* \*

THIS ASSIGNMENT IS MADE SUBJECT TO THE FOLLOWING CONDITION AND PROVISION:

\* \* \* \* \* \*

1.

All of the right, title, interest and privileges herein conveyed to and conferred upon Western will cease and terminate and shall revert to and revest in Superior, unless within thirty (30) days after the date hereof, Western shall commence the actual drilling of a well for oil and gas upon the above described land....

2.

Western shall and hereby does assume and agree to perform and discharge all of the [Dean] lease obligations, express or implied.... To this end, it is recognized by the parties hereto ... that there now are a number of such off-set wells which Western shall protect against by the drilling of properly located wells on the above described land, in due and proper time, and subject to all of the applicable provisions of this agreement.

\* \* \* \* \* \*

7.

Upon the termination of the rights of Western hereunder and/or with respect to the above described lease, as herein and in said lease expressly provided, or otherwise, Western shall deliver to Superior upon demand, a good and sufficient quit-claim deed and release. Any delay, failure or refusal on the part of Western to deliver any such quit-claim and release shall in no way prevent such rights from terminating, and reverting to and revesting in Superior as herein expressly provided and contemplated.

Western immediately drilled and completed a single well, the Carrie Dean B No. 1, which subsequently ceased production some time in July of 1961. The well was converted to salt water disposal. Other than drilling the Carrie Dean B No. 1 well, Western initiated no further action to achieve production.

On 23 August 1960, prior to the cessation of production, E.P. Campbell, president of Western, signing in his personal capacity, conveyed to the Dakota Company, Inc. "all of [his] right, title and interest ... as conveyed to [him] by assignment[ ] of record in Cochran County, Texas, in and to" the Dean lease "insofar as said lease covers the" 329.3 acres to which the assignment applies. Through subsequent transactions, an assignment was made to Torreyana Oil Company, which successfully completed a new producing well on the 329.3 acres in October, 1979. With that well continuing to produce, other transactions concerning the tract occurred with the eventual result that Ricane, Inc. acquired an overriding royalty interest and Argonaut and Cordova acquired the working interest.

E.P. Campbell died on 9 May 1961, shortly before the Carrie Dean B No. 1 well ceased production. On 19 July 1965, the Texas Secretary of State forfeited Western's corporate charter, giving rise to appellants' position that they, as shareholders and as heirs of shareholders, stand in Western's shoes as successors to all interests belonging to the defunct corporation.

By a single point of error, appellants contend the trial court erred in granting the summary judgment. Under the point, appellants maintain that the grounds on which appellees moved for summary judgment either are not viable as a matter of law or require the resolution of material fact issues, and that the court erred in denying their motion for continuance and in overruling their objections to appellees' mo-

tions for summary judgment and affidavits attached thereto.

An essential element of appellants' pleaded theory of recovery is that the Superior-to-Western assignment is, in their characterization, still valid and in full force and effect today. Then, the summary judgment rendered for appellees is proper if appellees' summary judgment evidentiary material disproved the efficacy of the assignment at the time of appellants' action. In that event, appellants' cause is without merit, and appellees prevail as a matter of law.[4] *Torres v. Western Casualty and Surety Company*, 457 S.W.2d 50, 52 (Tex. 1970).

■ In this regard, appellees rely, in part, on the termination of Western's rights under the assignment and the consequent reversion resulting from Western's cessation of operations under the Superior-to-Western assignment. The assignment expressly conditioned the partial sub-letting of the Dean lease upon Western's performance of the covenants and conditions set forth. In addition to the paragraph 1 requirement to commence a well within thirty days and the paragraph 2 provision for the development of the mineral estate by drilling off-set wells, a condition of the assignment was that, as also expressed in paragraph 2, Western assume and perform all obligations, express or implied, required by the underlying Dean lease. The incorporation of the Dean lease into the assignment made the lease a part of the assignment and required their concurrent operation, *Lloyds America v. Friend*, 91 S.W.2d 766, 768 (Tex.Civ.App.—Amarillo 1936, no writ), even though the lease and the assignment were not between the same parties. *Jones v. Kelly*, 614 S.W.2d 95, 98 (Tex. 1981).

■ The Dean lease transferred a determinable fee in real estate, limited by the provision that after the expiration of the primary term of ten years, the lease shall continue in force as long as oil or gas or casinghead gas is produced, or as much

longer as good faith drilling operations are conducted. Upon the happening of the event(s) which limit(s) the transfer, the determinable fee created terminates. *Gulf Oil Corporation v. Reid*, 161 Tex. 51, 337 S.W.2d 267, 269 (1960).

According to the adopted terms of the Dean lease, the primary term of which has expired, Western could perpetuate its assigned interest after the cessation of production from the Carrie Dean B No. 1 well, the only producing well on the tract, by conducting good faith drilling operations on the tract. The summary judgment evidentiary material conclusively established that neither Western, nor any one in its behalf, conducted any operations on the tract during the period of almost 23 years from the time the well ceased production until appellants filed their action.

■ Nevertheless, appellants submit that by the application of the non-divisibility or indivisibility rule, the lease on the 329.3–acre tract covered by the Superior-to-Western Assignment would continue in force so long as any portion of the original lease was continued in force by production from other portions of the leased property. *See Mathews v. Sun Oil Company*, 411 S.W.2d 561, 563 (Tex.Civ.App.—Amarillo 1967), *aff'd*, 425 S.W.2d 330 (Tex.1968). Of course, there is no disagreement with that rule of general application, but the question here is not the continuation of the Dean lease; rather, the question is whether the assignment of the portion of the Dean lease Superior made to Western was still in force at the time appellants initiated their action.

There can be no doubt that the only purpose of the assignment was to attain by the use of reasonable diligence the exploration, development, and production of minerals in the acreage subject to the assignment. To this end, the assignment obligated Western, and Western agreed, to commence the actual drilling of a well within thirty days after the date of the assignment, to drill other properly located wells in due and proper time to protect against

---

**4.** With the cause thus postured, it does not require a determination of, and we do not express

an opinion on, the title or interest of any appellee to or in the 329.3–acre mineral estate.

existing off-set wells, and to perform all of the incorporated Dean lease obligations, one of which was to conduct good faith drilling operations upon the cessation of production. This record establishes that Western only drilled one well, and did not carry out the other conditions and provisions of the assignment for exploration, development, and production either before or after the well ceased producing.

 We cannot quarrel with appellants' argument that the covenant for reasonable development is not a limitation on the estate granted or a condition subsequent which works an automatic forfeiture upon its breach. Generally, the breach arising from a partial, negligent, or imperfect development is remedied by an action for damages or, if the damages are incalculable, by a decree of conditional cancellation requiring development within a reasonable time or forfeiture. *See Slaughter v. Cities Service Oil Co.*, 660 S.W.2d 860 (Tex.App.—Amarillo 1983, no writ). But this record shows more than a mere breach of the covenant for reasonable development.

Accepting appellants' contention that E.P. Campbell's personal conveyance to the Dakota Company, Inc. was ineffective to convey any interest owned by Western, then since the cessation of production in 1961, Western completely ceased using the leased land assigned to it for the purpose of the assignment. Upon Western's complete cessation of the use of the leased land for the purpose of mineral exploration, development, and production, the determinable fee it acquired by the assignment terminated, *W.T. Waggoner Estate v. Sigler Oil Co.*, 118 Tex. 509, 19 S.W.2d 27, 32 (1929), triggering the reversion provided for in paragraph 7 of the assignment. As a result, the summary judgment material conclusively disproved the validity of the Superior-to-Western assignment at the time appellants initiated their action, and appellees were entitled to summary judgment on this ground presented to the trial court.

In reaching this conclusion, we have reviewed and considered the many authorities cited by appellants for a different deci-

sion, but the dissimilar circumstances and provisions of the instruments addressed by those authorities do not control the disposition of this cause. Additionally, in reviewing and considering appellants' complaints to the trial court's rulings on their motion for continuance and their objections to appellees' motions for summary judgment and affidavits attached thereto, we find that the rulings were on matters that have no direct bearing on the ground upon which the summary judgment is sustainable. Appellants' single point of error is overruled.

The judgment is affirmed.