Lavina ROGERS, et al., Petitioners,

v.

RICANE ENTERPRISES, INC., et al., Respondents.

No. C–7109.

Supreme Court of Texas.

June 14, 1989.

Robert P. Baxter, Jr., Joe Bailey Hyden, Dallas, for petitioners.

Walter G. Petty, III, Dallas, Glen M. Boudreaux, Houston, Dennis W. Burrows, Lubbock, Warren G. Tabour, Jr., Levelland, G. Medford Owen, Jr., Midland, Dave Caddell, Abilene, for respondents.

GONZALEZ, Justice.

This is an appeal of a summary judgment in a trespass to try title action involving a partial assignment of an oil and gas lease. Lavina Rogers and others (the Rogers Group), shareholders in the now defunct Western Drilling Company (Western), brought this action against Ricane Enterprises, Inc. and others (the Ricane Group) to recover possession of a working interest under a partial assignment of a larger oil and gas leasehold estate.[1] The trial court granted the Ricane Group's motion for summary judgment "on the grounds urged." The court of appeals affirmed on the sole ground that Western's title to the partial assignment had automatically terminated due to cessation of use.[2] 775 S.W.2d 391. We reverse the judgment of the court of appeals and remand the cause to the trial court for trial on the merits.

On May 31, 1937, Carrie Slaughter Dean, as lessor, entered into an oil and gas lease

---

1. The Texas Secretary of State forfeited Western's corporate charter on July 19, 1965.

2. The court of appeals' opinion was originally unpublished but has been ordered published by this court.

with P.N. Wiggins, Jr., as lessee, covering approximately 7,893 acres (base lease). The base lease included a habendum clause, which stated that Wiggins was "TO HAVE AND TO HOLD [the 7,893 acres] ... for a term of ten (10) years from [May 31, 1937] ..., hereinafter referred to as the primary term, and as long thereafter as oil and gas ... is produced...." The base lease further provided that if "the leased premises shall be hereinafter owned in the severalty or in separate tracts, the premises, nevertheless, shall be developed as one lease...."

Production was achieved on the base lease within the primary term. Subsequently, Superior Oil Company (Superior) acquired the base lease. On June 1, 1949, Superior assigned a 329.3 acre portion of the base lease on which there was no production to Western. Provisions in the Superior to Western assignment recited that:

THIS ASSIGNMENT IS MADE SUBJECT TO THE FOLLOWING CONDITION AND PROVISION:

1.

All of the right, title, interest and privileges herein conveyed to and conferred upon Western will cease and terminate and shall revert to and revest in Superior, unless within thirty (30) days after the date hereof, Western shall commence the actual drilling for oil and gas upon the above described land and at a location thereon which shall satisfy any then existing offset obligation....

2.

Western shall and hereby does assume and agree to perform and discharge all of the [base] lease obligations, express or implied.... To this end, it is recognized by the parties hereto ... that there now are a number of ... off-set wells which Western shall protect against by the drilling of properly located wells on the above described land, in due and proper time, and subject to all of the applicable provisions of this agreement.

Western immediately drilled and completed the Carrie Dean B No. 1 well, a marginally productive well. This well ceased production some time in July 1961. It was then converted to a salt water disposal well. All parties agree that no additional wells have been drilled by Western or its shareholders on this tract from 1961 to the present.

On August 23, 1960, just prior to the well's cessation of production, E.P. Campbell, the president of Western, signing in his individual capacity, conveyed to the Dakota Company, Inc. "all of [his] right, title and interest ... in [the base lease] ... insofar as said lease covers the ... 329.3 acres...." Through subsequent transactions, an assignment was made to Torreyana Oil Corporation, a member of the Ricane Group, which successfully completed a new producing well on the 329.3 acres in October 1979.

In 1984, the Rogers Group, the shareholders of Western, brought this trespass to try title action against the Ricane Group seeking to recover possession of the working interest on the 329.3 acre tract. The Rogers Group also sought damages for conversion of oil and casinghead gas produced from the property by the Ricane Group.

It is undisputed that the base lease remains in effect due to continuous production on other parts of the base lease. On that basis, the Rogers Group argues that its rights under the 1949 partial assignment also remain in effect regardless of the long period of inactivity because Western satisfied the only condition in the assignment, the commencement of drilling for oil and gas within 30 days of the date of the assignment.

The Ricane Group moved for summary judgment. Among the grounds urged were: (1) automatic termination of rights under the partial assignment; (2) abandonment; (3) laches; and (4) application of the three-year statute of limitations. The trial court granted the motion "on the grounds urged." The court of appeals affirmed the summary judgment solely on the automatic termination theory, holding that Western's working interest in the 329.3 acre tract automatically terminated due to cessation

of use. The court of appeals did not reach the other theories. In its application for writ of error to this court, the Rogers Group, in its sole point of error, asserts that the Ricane Group was not entitled to summary judgment because the grounds asserted are either not viable as a matter of law or require the resolution of material fact issues. In determining whether the court of appeals was correct in affirming summary judgment, we will now review the grounds urged by the Ricane Group.

*Automatic Termination*

As was noted previously, Western drilled and obtained production within thirty days of the assignment from Superior to Western. All parties agree that this satisfied the *condition* in paragraph 1 of the assignment. The instant dispute centers around the interpretation of paragraph 2 of the assignment. Specifically, the issue is whether paragraph 2 is a condition or a covenant.

The court of appeals determined that paragraph 2 expressly conditioned the partial assignment of the base lease upon Western's performance of the underlying base lease obligations. The court of appeals held that because Western failed to conduct any drilling operations on the 329.3 acre tract for almost 23 years, Western's rights, and therefore the Rogers Group's rights, under the assignment had automatically terminated and had reverted to Superior. We disagree.

■ In construing paragraph 2 of the assignment, we note that an important distinction exists between a condition and a covenant. *See Freeman v. Magnolia Petroleum Co.,* 141 Tex. 274, 171 S.W.2d 339, 342 (1943); *Shuttle Oil Corp. v. Hamon,* 477 S.W.2d 701, 704 (Tex.Civ.App.—Beaumont 1972, writ ref'd n.r.e.). The distinction between conditions and covenants lies in the appropriate remedy for their breach. Breach of a condition results in automatic termination of the leasehold estate upon the happening. of stipulated events. Breach of a covenant does not automatically terminate the estate, but instead subjects the breaching party to liability for

monetary damages, or in extraordinary circumstances, the remedy of a conditional decree of cancellation. *W.T. Waggoner Estate v. Sigler Oil Co.,* 118 Tex. 509, 19 S.W.2d 27, 29–31 (1929).

■ In paragraph 2 of the assignment, Western simply agreed to perform all the *obligations* of the base lease, express or implied. Since the parties obviously knew how to create a condition in paragraph 1, the dissimilar language in paragraph 2 indicates that the parties intended the latter paragraph to act as a covenant. We hold that paragraph 2 is a covenant, not a condition, and that the court of appeals erroneously read into paragraph 2 a condition on the estate conveyed. Our holding is supported by two general rules of contract and leasehold construction. First, a court should not, under the guise of contract construction, imply "terms in opposition to the express language that the parties themselves have written into the contracts." *Dallas Power & Light Co. v. Cleghorn,* 623 S.W.2d 310, 311 (Tex.1981). Second, doubts should be resolved in favor of a covenant instead of a condition. *See Henshaw v. Texas Natural Resources Found.,* 147 Tex. 436, 216 S.W.2d 566, 570–71 (1949). The language used by the parties to an oil and gas lease will not be held to impose a special limitation on the grant unless it is clear and precise and so unequivocal that it can reasonably be given no other meaning. *Fox v. Thoreson,* 398 S.W.2d 88, 92 (Tex.1966). Because we construe paragraph 2 as being a covenant rather than a condition, no automatic termination of Western's rights under the partial assignment occurred. Thus, summary judgment cannot be sustained on that ground.

We will now determine whether any of the other theories advanced by the Ricane Group will support the summary judgment. When a trial court's order granting summary judgment does not specify the ground or grounds relied on for the ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. *Carr v. Brasher,* (Tex.1989); *Borg–Warner Acceptance Corp. v. C.I.T. Corp.,* 679

S.W.2d 140, 142 (Tex.App.—Amarillo 1984, writ ref'd n.r.e.).

### Abandonment

██ As a ground for summary judgment, the Ricane Group asserts that the Rogers Group had abandoned the property in question. An oil and gas lease conveys an interest in real property as does an assignment of all or a portion thereof. *See Texas Co. v. Daugherty*, 107 Tex. 226, 176 S.W. 717, 720 (1915); Walker, *The Nature of the Property Interests Created by an Oil and Gas Lease in Texas*, 7 Tex.L.Rev. 539, 593 (1929). Abandonment of title to real property is not recognized in Texas. *City of Corpus Christi v. McCarver*, 275 S.W.2d 194, 196 (Tex.Civ.App.—San Antonio), *rev'd on other grounds*, 155 Tex. 153, 284 S.W.2d 142 (Tex.1955); *Pugh v. Clark*, 238 S.W.2d 980, 984 (Tex.Civ.App.—Galveston 1951, writ ref'd n.r.e.); *see also* 4 F. Lange, Land Titles § 406 (Texas Practice 1961). Thus, title to real property interests acquired under an oil and gas lease may not be abandoned. Therefore, summary judgment cannot be sustained on the theory that the Rogers Group abandoned the working interest acquired under the partial assignment of the base lease.

### Laches

██ We now address the issue of whether the Ricane Group's summary judgment can be sustained under the doctrine of laches. Two essential elements of laches are (1) unreasonable delay by one having legal or equitable rights in asserting them; and (2) a good faith change of position by another to his detriment because of the delay. *City of Fort Worth v. Johnson*, 388 S.W.2d 400, 403 (Tex.1964). As a ground supporting summary judgment, the Ricane Group maintains that the Rogers Group's suit "is barred by the doctrine of laches as a matter of law due to ... unreasonable delay in asserting claims to the lease in question...." Laches is not a defense in a trespass to try title suit where the plaintiff's right is based on legal title. *See Cagle v. Sabine Valley Timber & Lumber Co.*, 109 Tex. 178, 202 S.W. 942, 943 (Tex. 1918) (the plea of stale demand could not be interposed to defeat legal title); *Perkins v. Smith*, 476 S.W.2d 902, 907 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n.r. e.); *Smoot v. Woods*, 363 S.W.2d 798, 802 (Tex.Civ.App.—Fort Worth 1962, writ ref'd n.r.e.). Therefore, summary judgment cannot be affirmed on this theory.

### Limitations

The Ricane Group also urges as a ground for summary judgment that the Rogers Group's trespass to try title suit is barred by the three-year statute of limitations set forth in section 16.024 of the Texas Civil Practice and Remedies Code. That section provides:

A person must bring suit to recover real property held by another in peaceable and adverse possession under title or color of title not later than three years after the day the cause of action accrues.

Tex.Civ.Prac. & Rem.Code Ann. § 16.024 (Vernon 1986). The person or entity (here, the Ricane Group) claiming rights under this statute must assert a claim under "title" or "color of title" in order to avail itself of the benefits of this statute. *See* H. Thurow, Trespass to Try Title 123, 125 (1988).

The statute defines "title" as a regular chain of transfers of real property from or under the sovereignty of the soil. Tex.Civ. Prac. & Rem.Code Ann. § 16.021 (Vernon 1986). "Color of title" means a consecutive chain of transfers to the person in possession that: (A) is not regular because of a muniment that is not properly recorded or is only in writing or because of a similar defect that does not want of intrinsic fairness or honesty; or (B) is based on a certificate of headright, land warrant, or land scrip. *Id.* The Rogers Group contends that the Ricane Group is not entitled to summary judgment under the three-year statute of limitations theory because the Ricane Group has failed to prove either "title" or "color of title" as a matter of law.

██ The movant for summary judgment on the basis of the running of the statute of limitations assumes the burden of showing as a matter of law that the suit is

barred by limitations. *Delgado v. Burns,* 656 S.W.2d 428, 429 (Tex.1983). The Ricane Group by motion for summary judgment asserts:

> Movant would show that the depositions and exhibits on file regarding Torreyana Oil Corporation (Harry Allred deposition), and the successors of Torreyana who engaged in drilling and production operations, show conclusively that peaceable and adverse possession of the lease in question began in 1979 and continued for a period in excess of three years prior to the filing of plaintiff's suit on April 2, 1984. Therefore, any and all claims asserted by plaintiffs as to the personal property (oil and gas produced from the lease) derive from and depend upon their claims to the realty, and those claims as to the personalty must also fail as a matter of law.

The Harry Allred deposition to which the motion for summary judgment specifically refers is not part of the record on appeal and the record does not reflect that it was or could have been considered by the trial court.[3] The Ricane Group did not present to the trial court with its motion for summary judgment sufficient evidence to show its claim of "title" or "color of title." The motion does no more than refer to whatever may have been "on file." Such a general reference to a voluminous record which does not direct the trial court and parties to the evidence on which the movant relies is insufficient. Because the Ricane Group has failed to meet their burden of proving adverse possession under "title" or "color of title" as a matter of law, summary judgment cannot be sustained on the basis of the running of the three-year statute of limitations.

For the reasons stated, the judgment of the court of appeals is reversed, and the cause is remanded to the trial court for trial on the merits.

---

**3.** We note, additionally, that since the trial court rendered judgment on this case, Texas Rule of Civil Procedure 206 has been changed, effective January 1, 1988, so that depositions are no longer to be filed with the trial court as a matter of course.