IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00107-CV

 

In the
Matter of A.G.

 

 

 



From the 289th District Court

Bexar County, Texas

Trial Court No. 2005-JUV-02526

 



MEMORANDUM  Opinion



 








A.G. pleaded true to an allegation that A.G.
engaged in delinquent conduct by committing the offense of assault on a public
servant.  The trial court, following a disposition hearing, committed her to
the Texas Youth Commission (TYC). In a single point of error, A.G. complains
that the court abused its discretion by committing her to TYC rather than granting
probation.  We will affirm.

            The Family Code provides that to be
committed to TYC, the court must determine that “the quality of care and level
of support and supervision that the child needs” cannot be met inside the home
and that “reasonable efforts” were made to prevent the need for removal.  Tex. Fam. Code § 54.04(i)(1) (Vernon Supp. 2006).  We review the disposition order for an abuse of discretion.  In re
S.S., No. 10-03-00270-CV, 2004 Tex. App. LEXIS 9064 at *2 (Tex. App.—Waco 2004, no pet.) (mem. op.).  A court abuses its discretion when it acts
arbitrarily or unreasonably, without reference to guiding rules included in the
Family Code.  In re J.K.N., 103 S.W.3d 465, 466 (Tex. App.—San Antonio
2003, no pet.).

The charges stem from a classroom incident with A.G.’s
teacher.  A.G., a twelve-year-old attending the school district’s alternative
school for students with behavioral problems, became defiant and uncontrollable
with the teacher’s aide.  When the teacher intervened, A.G. kicked the
teacher.  Upon being taken to the principal’s office, A.G. continued the verbal
and physical defiance.  The principal called school district police.  While
attempting to transport A.G. to the district’s police department, A.G. kicked the
police officer causing him to bleed.  During the car ride, A.G. slipped out of
the handcuffs and attempted to escape the patrol car.  At the station, A.G.
attempted again to escape the handcuffs and scratched herself and other
officers.  As a result of this incident, A.G. was charged with the assault of a
public servant for kicking the teacher and resisting arrest.  The resisting
arrest charge was dropped upon A.G. pleading true to the assault charge.

At the disposition hearing, psychological evaluations
showed that A.G. suffers from bipolar disorder, oppositional defiant disorder,
attention deficit hyperactivity disorder, and learning disorders.  Further,
there was a history of self-mutilation and suicidal ideations.  A.G. had
previously assaulted four teachers at the school.  A.G. had several, short-term
commitments to area psychiatric hospitals which had not improved her behavior. 
The school principal testified that the alternative school was not appropriate
for A.G. and neither was home schooling.  A.G.’s mental health worker testified
that A.G. had attempted to throw a chair at him.  He felt that commitment to
TYC was appropriate.

There was also testimony that A.G. responded well
to her mother.  A teacher’s assistant said that A.G.’s behavior improved in the
presence of her mother.  The mother testified that she was able to home school
A.G. and that in the home her behavior improved.  A.G. testified to needing personal
space and wanting to stay at home.  The doctor who conducted A.G.’s
psychological evaluations said that because of A.G.’s age, intensive
supervision within the probation department was appropriate, though TYC probation
department felt they could not maintain that required level of supervision and that
commitment was more appropriate.

The record shows that the juvenile court judge
engaged in extensive deliberation in reaching her conclusion.  At the hearing,
the judge stated she had considered every option and, “though [she] prefer[ed]
not to,” had to send A.G. to the TYC.  The order stated that commitment to the
TYC was appropriate because A.G. had committed a felony and had numerous health
issues and “bizarre behaviors” which the TYC could address.  These findings are
well supported by the record.  Thus, the juvenile court did not abuse its
discretion in placing A.G. with the TYC.  A.G.’s sole issue is overruled.




Having overruled the sole issue on appeal, the
juvenile court's disposition order is affirmed.

 

 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

Affirmed

Opinion delivered and
filed July 5, 2007

[CV06]






 style='text-align:justify;line-height:200%'>            Waiver is an intentional
relinquishment of a known right or intentional conduct inconsistent with
claiming that right.  Jernigan v. Langley, 111 S.W.3d 153, 156 (Tex.
2003); Palladian Bldg. Co. v. Nortex Found. Designs, Inc., 165 S.W.3d
430, 434 (Tex. App.—Fort Worth 2005, no pet.).  Although waiver is ordinarily a
question of fact, when the facts and circumstances are admitted or clearly
established, the question becomes one of law.  Jernigan, 111 S.W.3d at
156; Palladian Bldg., 165 S.W.3d at 434.  Waiver is largely a matter of
intent, and for implied waiver to be found through a party's actions, intent
must be clearly demonstrated by the surrounding facts and circumstances.  Jernigan,
111 S.W.3d at 156.  There can be no waiver of a right if the person sought to
be charged with waiver says or does nothing inconsistent with an intent to rely
upon such right. Jernigan, 111 S.W.3d at 156; Palladian Bldg.,
165 S.W.3d at 434.  

            The Ustaniks argue that
Nortex and Coffee waived their right to a dismissal because Nortex and Coffee
waited almost two years and five month to file a motion to dismiss after
raising a certificate of merit defense in their original answer and because
Nortex and Coffee participated in discovery, designated their expert witness,
filed traditional and no evidence motions for summary judgment, participated in
mediation, participated in various pre-trial activities, and requested the
amending of the Ustaniks’ expert report. Some of the claimed actions taken are
not supported by the record.  See Palladian Bldg., 165 S.W.3d at
434-435. 

            Like a former version of
the Medical Liability Act, former Tex.
Rev. Civ. Stat. art. 4590i, § 13.01(d), repealed and recodified as amended
by Act of June 2, 2003, 78th Leg., ch. 204, § 10.09, eff. Sept. 1, 2003, section 150.002 does not contain a deadline to file a motion to dismiss.  See
Act of May 18, 2005, 79th Leg., R.S., ch. 208, § 2, 2005 Tex. Gen. Laws 369,
370 (amended 2009) (current version at Tex.
Civ. Prac. & Rem. Code Ann. § 150.002(b) (Vernon Supp. 2009)).[1] 
When a statute does not contain a deadline, the mere fact that a defendant
waits to file a motion to dismiss is insufficient to establish waiver.  See
Jernigan, 111 S.W.3d at 157; see also Landreth v. Las Brisas Council of
Co-Owners, Inc., 285 S.W.3d 492, 500-501 (Tex. App—Corpus Christi 2009, no
pet.).  The Ustaniks find it significant that in Landreth, the court
found no waiver when the defendant waited only 8 days before filing a motion to
dismiss after discovering that the affiant did not practice in the same area of
practice as the defendant.  We do not.  The Landreth court acknowledged
that the certificate of merit statute does not have a deadline and that the
Texas Supreme Court found no waiver when a doctor waited 600 days to file a
motion to dismiss under the healthcare liability statute, a statute similar to
this one.  Landreth, 285 S.W.3d at 500-501; see Jernigan v. Langley,
111 S.W.3d 153 (Tex. 2003).  The Landreth court only mentioned the 8 day
delay while discussing the action of participating in discovery, finding that
there was no intent on Landreth’s part to waive its right to file a dismissal. 
Id. at 501.  The court did not find that a defendant could not
wait any longer than a certain period of time.  Accordingly, the fact that
Nortex and Coffee waited 2 years and five months to file the motion to dismiss
is insufficient, by itself, to establish waiver.  The critical question is
whether Nortex and Coffee took actions that were inconsistent with exercising
their right to file a motion to dismiss.

            Further, participation in
discovery and filing motions for summary judgment do not necessarily
demonstrate an intent to waive the right to move for a dismissal.  See
Jernigan, 111 S.W.3d at 157; see also Perry Homes v. Cull, 258
S.W.3d 580, 590 (Tex. 2008) (citing examples of participation in discovery
where the Court did not find waiver of an arbitration clause).  Attempting to
learn more about the case in which one is a party does not demonstrate an
intent to waive the right to move for a dismissal.  See id.  And even
though Nortex and Coffee filed motions for summary judgment, none of the
motions were ever ruled on; however, we are not prepared to say that obtaining
a ruling on a summary judgment motion is necessarily inconsistent with the
right to file a motion to dismiss.  Finally, the Ustaniks have not pointed to
anything in the remaining documents that shows actions inconsistent with an
intent to rely upon the right to seek a dismissal.  We have not found anything
either.  Even the provided portions of the deposition of Coffee do not show an
intent to waive the right to seek a dismissal.  

            In sum, we conclude that
Nortex’s and Coffee’s actions were not so inconsistent with an intent to assert
the right to a dismissal under section 150.002 as to amount to a waiver of that
right.  The Ustaniks’ first issue is overruled.

                                                                        Laches

            In their second issue, the
Ustaniks allege that the trial court abused its discretion in granting the
motion to dismiss because the doctrine of laches precluded Nortex’s and
Coffee’s right to seek a dismissal.  Laches is an affirmative defense akin to
estoppel.  Ft. Worth v. Johnson, 388 S.W.2d 400, 403 (Tex. 1964); Tex. R. Civ. P. 94.  Assuming without
deciding that the Ustaniks, as plaintiffs, may use this affirmative defense to
prevent the dismissal of their suit, the burden was on the Ustaniks to prove
the essential elements of laches.  See id.  The two essential elements
are (1) unreasonable delay by one having legal or equitable rights in asserting
them, and (2) a good faith change of position by another to his detriment
because of the delay.  Id; see also Caldwell v. Barnes, 975 S.W.2d 535,
538 (Tex. 1998); Rogers v. Ricane Enterprises, Inc., 772 S.W.2d 76, 80
(Tex. 1989).

            We have already held that
Nortex and Coffee did not waive their rights to pursue a motion to dismiss. 
Upon the same basis, arguments, and evidence, we also find that there was not
an unreasonable delay by them in filing their motion to dismiss.  The Ustaniks
did not prove the first element of laches.  In attempting to establish the
second element, the Ustaniks stated in their response to the motion to dismiss
that they hired a new attorney and incurred an additional $22,000 in fees and
costs.  This is not the type of “change in position” sufficient to establish
the second element.  Further, the Ustaniks provided no evidence to support this
statement.  Accordingly, the Ustaniks’s second issue is overruled.

                                                            Non-negligence
Claims

            In their third issue, the
Ustaniks argue that the trial court erred in dismissing  the remainder of their
claims because those claims are non-negligence claims and are not subject to
the requirement for a certificate of merit.  In addition to a claim of
negligence, the Ustaniks allege in their second amended petition claims for
Deceptive Trade Practices Act violations, negligent misrepresentation, and
breach of contract.  

            Some courts have held that,
under the 2005 version of section 150.002, the filing of a certificate of merit
is not required for non-negligence claims.  See Landreth v. Las Brisas
Council of Co-Owners, Inc., 285 S.W.3d 492, 500 (Tex. App—Corpus Christi
2009, no pet.); Consol. Reinforcement v. Carothers Exec. Homes, Ltd.,
271 S.W.3d 887, 894 (Tex. App.—Austin 2008, no pet.); Kniestedt v. Sw. Sound
& Elecs., 281 S.W.3d 452, 455 (Tex. App.—San Antonio 2007, no pet.). 
In 2009, the statute was amended to specifically address this determination
initiated by the San Antonio Court in 2007.  See 2009 Legis. Bill Hist.
TX S.B. 1201  (“This issue arose out of a couple of 2007 court cases from the
San Antonio 4th Court of Appeals, which said that although the statute was
broadened in 2005 from ‘negligence’ actions to ‘any action arising out of the
provision of professional services,’ the affidavit requirement still spoke only
to negligence. Therefore, the court did not agree that it applied to actions
other than negligence, despite clear language in the statute and the fact that it
was specifically amended to broaden it in 2005 (HB 1573)”).  Thus, under a 
proper analysis of the 2005 act it may be that if there is not a certificate of
merit for the negligence claim, the trial court is required to dismiss not only
the negligence claim but to also dismiss “any action arising out of the
provision of professional services.”  As will be explained, we find it
unnecessary in this proceeding to resolve that question.

            The Ustaniks urge us to
follow specific opinions from the Austin and San Antonio courts and hold that,
without any analysis of the claims, their other claims are not negligence
claims and therefore are not subject to the requirement of a certificate of
merit.  See Consol. Reinforcement, 271 S.W.3d at 894; Gomez v. STFG,
Inc., No. 04-07-00223-CV, 2007 Tex. App. LEXIS 7860, *6-7 (Tex. App.—San
Antonio Oct. 3, 2007, no pet.).  However, the First Court, relying on the Fort
Worth Court’s opinion in Parker County Veterinary Clinic, Inc. v. GSBS
Batenhorst, Inc., No. 2-08-380-CV, 2009 Tex. App. LEXIS 8986 (Tex. App.—Fort Worth Nov. 19, 2009, no pet.) (mem.), held that it was not bound by the
labels of claims used by the plaintiff and looked to the plaintiff’s pleadings
to determine whether the additional claims asserted were non-negligence
claims.  Ashkar Eng'g Corp. v. Gulf Chem. & Metallurgical Corp., No.
 01-09-00855-CV, 2010 Tex. App. LEXIS 769, *22 (Tex. App.—Houston [1st Dist] Feb. 4, 2010) (mem.) (appeal dism’d, 2010 Tex. App. LEXIS 2807, April 15, 2010).  We
believe this to be the better approach.

            In many areas of the law,
reviewing courts have not bound themselves by the labels given to a party’s
claims.  See Zurich Am. Ins. Co. v. Nokia, Inc., 268 S.W.3d 487, 495
(Tex. 2008) ("’[W]e have said that the label attached to the cause of
action--whether it be tort, contract, or warranty-does not determine the duty
to defend,’" quoting Lamar Homes, Inc. v. Mid-Continent Cas. Co.,
242 S.W.3d 1, 13 (Tex. 2007) and Farmers Tex. County Mut. Ins. Co. v.
Griffin, 955 S.W.2d 81, 82 (Tex. 1997)); Duerr v. Brown, 262 S.W.3d
63, 70 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (legal malpractice); Anglo-Dutch
Petroleum Int'l, Inc. v. Haskell, 193 S.W.3d 87 (Tex. App.—Houston [1st
Dist.] 2006, pet. denied) (loan agreements); In re Conseco Fin. Servicing
Corp., 19 S.W.3d 562, 568 (Tex. App.—Waco 2000, orig. proceeding)
(arbitration agreements).  We see no reason in these types of cases to be bound
by the labels attached to the claims so as to keep us from looking at the
pleadings to determine whether the claims asserted are actually non-negligence
claims.  Thus, we will not follow the methods used by Consol. Reinforcement
and Gomez which looked only to the label used by the party for a claim.

Factual Allegations

            According to the Ustaniks’s
second amended petition, in January of 2004, they hired Graphic Homes, Inc. to
rebuild their home that had burned down.  Graphic Homes hired Nortex and Coffee
to design and draft the foundation plans for the new house.  Nortex and Coffee
were also hired to inspect the construction of the foundation before the
concrete was poured.  The Ustaniks contended that they relied on Nortex and
Coffee, as engineers, to design and inspect the foundation.  The Ustaniks also
claimed that they relied on the expertise of Nortex and Coffee to ensure that
the foundation was structurally sound and capable of performing its intended
purpose.  

            Coffee provided Graphic
Homes with a set of foundation plans with an engineering certificate stamped
thereon.  The plans provided a specific depth by which the beams should extend
into the soil, a specific thickness for the slab, and the requirement that all
inspections for the foundation that require an engineering seal “must be
accomplished by the design engineer of record for the foundation.”  The plans
included post-tension cables.  They did not, however, include the use of piers
which was suggested by a geotechnical engineer.  Before the foundation was
poured, Steve Jopling, an employee of Nortex inspected the construction of the
foundation.  Jopling recorded his findings on an inspection form which, at the
time the petition was filed, could not be located.  The foundation was poured
the next day.

            Within 7 months of the
house being completed, the Ustaniks began to notice the floors cracking, doors
jamming, sheet rock and moldings separating, and exterior mortar and rocks
cracking.  The Ustaniks complained to Graphic Homes which contacted Nortex. 
Nortex made two separate inspections, four months apart, of the house.  Coffee
noticed unlevelness ranging from 2 to 3 inches but denied that either he or
Nortex had any responsibility for the cracked and unlevel foundation.  

 

Negligence

            For its negligence claim,
the Ustaniks contended that Nortex and Coffee owed them a duty to design and
inspect their foundation as reasonable and prudent engineers acting under the
same or similar circumstances.  They claimed that Nortex and Coffee breached
their duty when they failed to design the foundation with the use of piers
despite a geotechnical engineer’s recommendation.  The Ustaniks alleged that
Nortex’s and Coffee’s breach of this duty caused the foundation to fail.

            The Ustaniks also alleged
that Nortex and Coffee owed them the duty to perform a proper pre-pour
foundation inspection.  As per the plans, an engineer was to perform the
pre-pour inspection.  Steve Jopling, who had no expert training or
certification, performed the inspection.  Thus, the Ustaniks allege Nortex and
Coffee breached their duty to properly inspect the foundation prior to it being
poured because an engineer did not perform the inspection.  The failure to
perform a proper inspection contributed to the proximate cause of the
foundation failure.  

DTPA

            The Ustaniks alleged that
Nortex and Coffee also violated the Deceptive Trade Practices Act.  See Tex. Bus. & Com. Code Ann. § 17.46
(b)(5) (Vernon Supp. 2009). Specifically, they alleged that according to the
stamped engineered plans, all inspections were to be performed by the design
engineer of record for the foundation.  They further contended that
“sponsorship and approval” of the plans was false, misleading, and deceptive
because a Nortex employee, Steve Jopling, who was not an engineer, conducted
the pre-pour inspection.  The Ustaniks alleged that they relied on the
representation in the plans and that the misrepresentation could not be
characterized as advice, judgment, or opinion, taking it out of the
professional services exemption of the DTPA.  

Negligent Misrepresentation

            The Ustaniks also claimed
that Nortex and Coffee were liable for negligent misrepresentation. 
Specifically, they alleged that Nortex and Coffee negligently represented to
them that all inspections of the foundation would be accomplished by the design
engineer of record.  They claimed that the representation was made in the
course of business and as part of a transaction for which Nortex and Coffee had
a pecuniary interest.  The Ustaniks alleged that the representations supplied
them with false information upon which they relied to their detriment.  They
also claimed that in making the representation that an engineer would perform
the inspection Nortex and Coffee did not exercise reasonable care or competence
in communicating the correct information to them.  

Breach of Contract

            In their last claim, the
Ustaniks alleged that Nortex and Coffee both expressly and impliedly contracted
with Graphic Homes to design a foundation plan that if inspected and
constructed properly would fulfill its intended use.  They alleged that Nortex
and Coffee breached their contract with Graphic Homes by designing foundation
plans that were inadequate for the geographic location of the Ustaniks’s home
and for failing to perform a proper pre-pour inspection by a licensed engineer
which did not reveal a lack of piers, lack of additional reinforcement, or
excessive slab thickness.  The Ustaniks alleged that these deficiencies caused
the foundation to fail.  

            The Ustaniks further
alleged that as intended third party beneficiaries, they asserted their own
direct breach of contract claims against Nortex and Coffee.  Specifically, they
alleged that they were to receive the primary benefit of Nortex’s and Coffee’s
presumed obligation to properly design and inspect the foundation for their
home.  By failing to design and properly perform a pre-pour inspection of the
foundation, Nortex and Coffee breached their express and implied contractual
obligations owed to the Ustaniks.

            In reviewing all of these
claims and factual allegations in the Ustaniks’s second amended petition, we
conclude the underlying complaint is that the Ustaniks were injured by Nortex’s
and Coffee’s breach of the duty owed to the Ustaniks as a result of their
engagement as professional engineers by failing to design a proper foundation
and in not properly conducting a pre-pour foundation inspection.  Thus, like
the First Court in Ashkar, we believe that the Ustaniks’s additional
claims of DTPA violations, negligent misrepresentation, and breach of contract,
regardless of how they are labeled, all constitute claims of professional negligence
which require a certificate of merit.  Cf. Black v. Wills, 758 S.W.2d
809, 814 (Tex. App.—Dallas 1988, no pet.) (In the context of a legal
malpractice claim, the court stated, “Whichever label Black places on this
cause of action, it is in the nature of a tort action…. We also reject the view
that Black’s claim is technically an ‘action for debt…’”).  Accordingly, the
trial court did not err in dismissing all of the Ustaniks’s claims, and their
third issue is overruled.

                                                            Conclusion

            Having overruled each of
the Ustaniks’s issues on appeal, we affirm the judgment of the trial court.

 

                                                                                    TOM
GRAY

                                                                                    Chief
Justice

 

Before
Chief Justice Gray,

            Justice
Reyna, and

            Justice
Davis

(Justice
Davis concurring and dissenting)

Affirmed

Opinion
delivered and filed June 16, 2010

[CV06]


 

 








 









[1]
Subsequent to the filing of the original petition in Jernigan v. Langley,
the legislature amended the Medical Liability Act to require an “objection” to
an expert report to be made not later than the 21st day after the report is
served.  See Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, eff. Sept. 1, 2003 (current version at Tex.
Civ. Prac. & Rem. Code Ann. § 74.351(a) (Vernon Supp. 2009)).  The
amendment did not address the time frame within which a motion to dismiss must
be filed.