

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00009-CV

_____


CIRCLE RIDGE PRODUCTION, INC., Appellant

V.

KITTRELL FAMILY MINERALS, LLC, Appellee


On Appeal from the 241st District Court
Smith County, Texas
Trial Court No. 12-0107-C


Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Kittrell Family Minerals, LLC,[1] brought a declaratory judgment[2] and conversion suit against Circle Ridge Production, Inc., alleging that Circle Ridge failed to pay the prescribed overriding royalties even after receiving notice of its failure. Kittrell claimed the failure resulted in a forfeiture of the assignment of an oil and gas lease. The trial court granted Kittrell's motion for summary judgment.[3]

Circle Ridge argues that the trial court erred in granting summary judgment on grounds not addressed in Kittrell's motion, Kittrell failed to provide notice in strict compliance with the assignment, and the lack of a signed division order excused the nonpayment of the overriding royalty. According to Circle Ridge, genuine issues of material fact exist concerning the date of forfeiture and whether Circle Ridge was entitled to receive reimbursement for good-faith

---

[1]Originally appealed to the Tyler Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). As a transfer case, we are required to apply the precedent of the Tyler Court of Appeals to the extent it may differ from our precedent. *See* TEX. R. APP. P. 41.3.

[2]Except for boundary line disputes, a trespass to try title claim is the exclusive method in Texas for adjudicating disputed claims of title to real property, and, such claims cannot be brought as declaratory judgments. *See Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384 (Tex. 2011). The Tyler Court of Appeals has held that when no objections or special exceptions are made to a lawsuit being brought as a declaratory judgment, the error, if any, in failing to bring the action as a trespass to try title has been waived. *See Cabot Oil & Gas Corp. v. Healey, L.P.*, No. 12-11-00236-CV, 2013 Tex. App. LEXIS 3934 (Tex. App.—Tyler Mar. 28, 2013, no pet. h.) (mem. op.) (failure to specially except waived any error in bringing lawsuit as declaratory judgment instead of trespass to try title).

[3]We note Kittrell's motion fails to specify whether it is a traditional or no-evidence motion for summary judgment. Circle Ridge treated the motion as a traditional motion for summary judgment. Because Kittrell had the burden of proof, we have also treated the motion as a traditional motion for summary judgment. Although the Texas Supreme Court has approved of filing combination summary judgment motions, the better practice is to clearly delineate which type of summary judgment is being sought. *Binur v. Jacobo*, 135 S.W.3d 646, 650–51 (Tex. 2004); *Holloway v. Tex. Elec. Util. Constr., Ltd.*, 282 S.W.3d 207, 213 n.3 (Tex. App.—Tyler 2009, no pet.) ([T]the better practice is to file two separate motions.").

2

improvements. Finally, Circle Ridge argues the trial court erred in awarding Kittrell attorney's fees.

We affirm in part and reverse in part concluding (1) the trial court rendered judgment on grounds that were supported by the summary judgment motions, (2) strict compliance occurred, (3) the untimely tender of overriding royalties did not excuse Circle Ridge's breach, (4) the untimely request for a division order did not excuse Circle Ridge's breach, (5) the trial court did not err in awarding attorney's fees, (6) genuine issues of material fact exist concerning the date of forfeiture, (7) the trial court erred in concluding Circle Ridge committed trespass, and (8) the trial court erred in failing to effectuate Kittrell's concession that Circle Ridge could recover the personal property at the well site.

## I.    Background Facts

On May 15, 2009, Kittrell, then the owner of the mineral lease, assigned the lease to Circle Ridge. The assignment reserved an overriding royalty interest as follows:

> Commencement of overriding royalty payments shall not be delayed beyond ninety (90) days after the last day of the month during which production commences from any well. After the commencement of overriding royalty payments from any well, all overriding royalty payable in money on account of hydrocarbons and products associated with hydrocarbons produced from such well during each calendar month shall be paid by Assignee's check mailed to the Assignor on or before the last day of the second succeeding calendar month. Such payment shall be accompanied by a statement showing the gross amount of oil produced since the last report and the gross production of all dry gas, residue gas, casinghead gas and other products produced from the Leased Premises, or lands pooled therewith, and that which was sold or used for the manufacture of gasoline and other products, and the market value of oil, dry gas, residue gas, casinghead gas and each other product produced from the Leased Premises. Overriding royalties not paid when due shall bear interest at the rate of twelve percent (12%) from their due date until paid. If royalty is not paid by such due date, Assignor may give Assignee written notice of nonpayment of the overriding

3

royalty (via certified mail to addressed Assignee at the address shown herein), and if Assignor's overriding royalty is not paid on or before expiration of sixty (60) days from Assignee's receipt of such notice, Assignor may terminate this agreement and evict Assignee forthwith.

The assignment specified that Circle Ridge's address was "300 East Northside Dr., Fort Worth, Texas 76106." The assignment was filed with the County Clerk of Smith County on June 11, 2009.

The lease was pooled on September 22, 2009, and production began on the pooled unit in February 2010. Having received no payments for its overriding royalty interest, Kittrell sent a letter to Circle Ridge on April 27, 2011, to "300 East Northside Dr., Fort Worth, Texas 76164-9234" demanding payment within sixty days. Despite having a different zip code than the one listed in the assignment, the letter was received by Circle Ridge at 300 East Northside Drive in Fort Worth, Texas, on April 29, 2011. On July 14, 2011, Kittrell sent a second letter demanding payment to "300 East Northside Dr., Fort Worth, Texas 76106[,]" but this letter only provided five days for payment.

Circle Ridge's first response was a letter dated August 9, 2011. Shortly thereafter, Circle Ridge sent Kittrell a division order dated August 11, 2011. In his summary judgment affidavit, Scott Kittrell, manager for Kittrell Family Minerals, LLC, stated he refused to sign the division order because the royalties had not been paid within sixty days of the notice and the division order contained an incorrect ownership interest. On August 30, 2011, Kittrell sent Circle Ridge a letter stating, "<u>You are hereby advised that the Assignment is terminated and Circle Ridge has been evicted effective immediately.</u>" Circle Ridge continued production and, on September 30, 2011, sent Kittrell a letter and a check for $11,241.05. In a letter dated October 4, 2011,

4

Kittrell's attorney returned the check stating, Kittrell "remains undecided in its intended course of action with regard to the unpaid royalties . . . ." On November 21, 2011, Kittrell sent Circle Ridge a letter advising that Kittrell had "terminated the Assignment" and "locked the gates to the lease" and that continued production would be considered trespassing.

## II.    Standards of Review

To prevail on a traditional motion for summary judgment, a movant must establish that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671 (Tex. 1979); *Baubles & Beads v. Louis Vuitton, S.A.*, 766 S.W.2d 377, 379 (Tex. App.— Texarkana 1989, no writ). The defendant must conclusively negate at least one element of each of the plaintiff's theories of recovery or plead and conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). Because the movant bears the burden of proof, all conflicts in the evidence are disregarded, evidence favorable to the nonmovant is taken as true, and all doubts as to the genuine issues of material fact are resolved in favor of the nonmovant. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985); *see Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 311 (Tex. 2002); *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). A motion for summary judgment must stand on its own merits, and the nonmovant may argue on appeal that the movant's summary judgment proof is insufficient as a matter of law, even if the nonmovant filed no response to the motion. *See M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000).

5

## III. The Trial Court Rendered Judgment on Grounds Supported by the Summary Judgment Motions

As noted above, Circle Ridge argues the trial court granted summary judgment on grounds not addressed by Kittrell's motion.[4] Circle Ridge alleges the motion for summary judgment failed to address its counterclaims for mitigation of damages, breach of warranty of title, breach of contract, and conversion.[5]

Kittrell's summary judgment motion addressed the breach of contract and conversion claims. Circle Ridge's breach of contract claims were resolved when the trial court found, as addressed below, strict compliance with the forfeiture provision had occurred. The conversion claim concerned the personal property left at the well site[6] and is also discussed below.

Breach of warranty of title was not asserted as a counterclaim or mentioned in Circle Ridge's amended answer. It was first mentioned in Circle Ridge's motion for new trial. In its

---

[4]A summary judgment can only be affirmed on grounds specifically presented to the trial court in the summary judgment motion. TEX. R. APP. P. 33.1; TEX. R. CIV. P. 166a(c); *see Clear Creek Basin Auth.*, 589 S.W.2d at 677; *Driskill v. Ford Motor Co.*, 269 S.W.3d 199, 206 (Tex. App.—Texarkana 2008, no pet.).

[5]In its brief, Circle Ridge implies the judgment is not "final and appealable." At oral argument, counsel clarified that the argument was that the trial court erred in granting a judgment without disposing of all issues and causes of action, not that the judgment was not final. We find the judgment is final and appealable, and this opinion will address Circle Ridge's claims that the trial court committed error in entering this judgment.

[6]Circle Ridge's amended answer and counterclaim merely contains a single sentence under the heading XVI which provides, "The conduct of KITTRELL constitutes conversion." Other than the request for return of personal property left at the well site, Circle Ridge failed to allege any facts in support of its conversion counterclaim. The sufficiency of the pleadings is judged based on whether they provide the opponent with fair and adequate notice. *Roark v. Allen*, 633 S.W.2d 804, 809–10 (Tex. 1982); *Burke v. Union Pac. Res. Co.*, 138 S.W.3d 46, 66–67 (Tex. App.—Texarkana 2004, pet. denied). "Fair notice" requires that an opposing attorney of reasonable competence can ascertain the nature and basic issues of the controversy. *Marin v. IESI TX Corp.*, 317 S.W.3d 314, 332 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *Burke*, 138 S.W.3d at 67. Kittrell only had fair notice of the request to return personal property. "A party is not required to specially except to a pleading defect if it lacks notice of the other party's intent." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 345 (Tex. 2011); *Taylor v. Taylor*, 337 S.W.3d 398, 401 (Tex. App.—Fort Worth 2011, no pet.) (failure to specially except did not waive challenge to lack of fair notice retroactive child support was being sought).

6

response to Circle Ridge's motion for new trial, Kittrell objected to the lack of any pleading on the breach of warranty of title. Because Circle Ridge failed to plead this counterclaim, the motion for summary judgment was not required to address it.

Although Circle Ridge pled in its first amended answer that "KITTRELL has failed to mitigate its damages," Circle Ridge failed to allege any facts supporting this bare allegation. Assuming, without deciding, that this minimal allegation was sufficient to give fair notice and assuming, without deciding, Kittrell waived any defect by failing to specially except,[7] Circle Ridge failed to assert this affirmative defense[8] in its summary judgment response. Because mitigation of damages is an affirmative defense, Circle Ridge had the obligation to raise it in its summary judgment response and to present summary judgment evidence. *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 749 (Tex. 1999). "A mere pleading does not satisfy either burden." *Id*. at 749–50. Circle Ridge's response does not raise the issue of mitigation of damages. Thus, Circle Ridge failed to carry its burden to both assert the affirmative defense of mitigation of damages and support it with summary judgment evidence. *See id.*

The summary judgment motions addressed the contract and conversion claims. Circle Ridge failed to plead warranty of title and failed to assert mitigation of damages in its response. Circle Ridge's complaint that the trial court rendered summary judgment on grounds not alleged in the summary judgment motion is overruled.

---

[7]*See* TEX. R. CIV. P. 90 (failure to specially except waives any defect of form or substance).

[8]Mitigation of damages is an affirmative defense which the breaching party must plead and prove. *S & G Associated Developers, LLC v. Covington Oaks Condo. Owners Ass'n*, 361 S.W.3d 210, 217 (Tex. App.—El Paso 2012, no pet.).

## IV.     Strict Compliance Occurred

Circle Ridge argues strict compliance with the terms of the assignment did not occur because the first notice contained an incorrect zip code.  Kittrell responds that strict compliance occurred because the notice was received at the correct location.  Kittrell alternatively argues only substantial compliance was required or actual notice with lack of prejudice is sufficient.

Texas cases have consistently required strict compliance for the termination or forfeiture of an interest in a mineral estate.  "[I]f the lease contains a provision giving the lessee a right of notice of any breach or default before declaring any forfeiture, it must be 'literally complied with.'"  *Vinson Minerals*, *Ltd. v. XTO Energy*, *Inc.*, 335 S.W.3d 344, 354 (Tex. App.—Fort Worth 2010, pet. denied) (quoting *Coastal Oil & Gas Corp. v. Roberts*, 28 S.W.3d 759, 763 (Tex. App.—Corpus Christi 2000, pet. granted, judgm't vacated w.r.m.)).

Several cases illustrate the literal compliance requirement.  When the lease required a thirty-day written notice of breach but only a twenty-five-day notice was given, literal compliance was not shown.  *Deace v. Stribling*, 142 S.W.2d 564, 567 (Tex. Civ. App.—Austin 1940, no writ).  Likewise, when a lease required the notice to "fully describe" the breach or default, literal compliance was not demonstrated by a demand for "an unspecified amount to be paid by an unspecified time for unspecified claims or charges."  *Vinson Minerals*, *Ltd.*, 335 S.W.3d at 357; *see XTO Inc. v. Pennebaker*, No. 07-10-00396-CV, 2011 Tex. App. LEXIS 10194, at *9  (Tex. App.—Amarillo Dec. 29, 2011, no pet.) (mem. op.) (failure to file affidavit as required by forfeiture clause).  These cases involve the question of whether the content of the notice was timely and specific and properly complied with the lease requirements.

8

This lease, undisputedly, contains a forfeiture clause. Circle Ridge does not argue that it did not receive notice of the default from Kittrell. Further, there is no argument that the content of the notice did not give fair or proper warning of the breach. Instead, the only argument is that the notice was not addressed with the proper mailing zip code. Circle Ridge has cited no authority that an error in a zip code prevented strict compliance. The Tyler Court of Appeals has suggested strict compliance, albeit in a different context, can be established despite the absence of a zip code. *See Reese v. Commissioners' Court of Cherokee Cnty.*, 861 S.W.2d 281, 284 (Tex. App.—Tyler 1993, no pet.). The Tyler court rejected the argument that the absence of the proper zip code prevented strict compliance. The court reasoned, because the zip code's absence did not interfere with any possible verification efforts, the absence did not invalidate a petition signature under the Texas Election Code. *Id.*

Circle Ridge argues that *Reese* is distinguishable because it concerns statutory compliance. Except for certain statutory exceptions,[9] strict compliance is required under the Election Code. *See In re Triantaphyllis*, 68 S.W.3d 861, 868 (Tex. App.—Houston [14th Dist.] 2002, orig. proceeding).

Similar to *Reese*, the zip code in this case was superfluous. Circle Ridge does not contend there are two physical locations in Fort Worth, Texas, with an address of 300 East

---

[9]The Fourteenth District Court of Appeals noted the Texas Legislature has exempted certain requirements from strict compliance including the zip code. We note that in 1997, the Texas Legislature amended the Election Code to provide that "[t]he omission of the zip code from the address does not invalidate a signature." *See* Act of May 23, 1997, 75th Leg., R.S., ch. 1349, § 52, 1997 Tex. Gen. Laws 5080, 5092 (amended 2005) (current version at TEX. ELEC. CODE ANN. § 141.063 (West 2010)). The Election Code in effect at the time *Reese* was decided did not include this exemption. *See* Act of May 9, 1985, 69th Leg., R.S., ch. 211, § 1, 1985 Tex. Gen. Laws 802, 956 (amended 1997) (current version at TEX. ELEC. CODE ANN. § 141.063).

Northside Drive. The notice was delivered to the exact physical location specified in the contract including delivery to the specified zip code. Although the zip code on the envelope may have been erroneous, the letter was not misdirected to a different location or to an incorrect zip code. The letter was delivered to Circle Ridge's physical location at 300 East Northside Drive, Fort Worth, Texas.[10]

By its nature, a zip code is more of an aid to the post office than a part of an address. Indeed, in the not so distant past, zip codes did not even exist. The zip code of a particular street address may change over time. Further, we note the post office has added an additional four numbers (referred to as ZIP+4) to the traditional five-digit zip codes. The zip code in the assignment does not contain the additional four numbers, whereas, the zip code to which the notice was addressed does.

The zip code's superfluous nature is reinforced by the language of the forfeiture clause. While the assignment requires the notice to be mailed to the specified address, the forfeiture clause is focused on actual notice. The forfeiture clause provides, "[I]f Assignor's overriding royalty is not paid on or before expiration of sixty (60) days **from Assignee's receipt of such notice,** Assignor may terminate . . . ." (Emphasis added.) By focusing on the receipt of actual notice as the event that establishes the sixty-day deadline, the forfeiture clause decreases the

---

[10]Circle Ridge argues that the letter was sent to an "incorrect" zip code address. We note that several documents from Circle Ridge contain either the 76164 or the 76164-9234 zip code. For instance, the printed check Circle Ridge sent to Kittrell on September 29, 2011, has the address listed as 300 East Northside Dr., Fort Worth, TX 76164-9234. In addition, the 76164 zip code was used on an August 9, 2011, letter from Circle Ridge to Kittrell, including certain royalty check detail statements and billing statements from the law firm of Gillen & Anderson. While it is accurate to state that the demand from Kittrell was sent to a different zip code than listed in the assignment, these documents demonstrate that zip code number 76164-9234 is not an incorrect zip code for Circle Ridge.

importance of the earlier requirement that the notice be sent "to addressed Assignee at the address shown herein." Strict compliance was required with the forfeiture clause, not the entire assignment. The forfeiture clause required actual notice at the address specified in the lease, and the record conclusively establishes Circle Ridge received actual notice at the exact address, including zip code, specified in the Assignment.

We conclude that strict compliance has been shown. We affirm the portion of the summary judgment finding strict compliance occurred.

## V.     The Untimely Tender of Overriding Royalties Did Not Cure Circle Ridge's Breach

Circle Ridge alternatively argues the forfeiture clause was not breached because it tendered the royalties on September 30, 2011. Because the lease had not been terminated, Circle Ridge argues the tender of payment prevented any breach.

The assignment required the royalties to be tendered within sixty days—not 154 days. We note Circle Ridge has not pled or argued waiver, ratification, or accord and satisfaction. Although the re-entry occurred after the royalty payment was tendered, the forfeiture clause was breached when the royalties were not paid sixty days after the first notice. We are bound by the language of the Assignment and cannot find the Assignment has implied terms that do not exist in the agreement. *See Rogers*, 772 S.W.2d at 79. The Assignment does not place any time limitations or other conditions on exercising the right to terminate. Once the breach of the forfeiture clause occurred, Kittrell had the right to terminate the lease.

Because the royalties were not tendered within sixty days of the notice, Kittrell's right to terminate the Assignment was not affected. The parties could have contracted for the right of

11

reversion to be relinquished if the royalties were paid prior to the Assignor exercising his right, under the forfeiture clause, to terminate the assignment. The Assignment, though, does not provide for such a relinquishment, and we are prohibited from inferring such a term. Circle Ridge's argument is overruled.

**VI.    The Untimely Request for a Division Order Did Not Excuse Circle Ridge's Breach**

Additionally, Circle Ridge argues its request for a division order on August 11, 2011, excused the breach of the forfeiture clause on June 28, 2011. Circle Ridge claims that because it had a right to suspend payments of royalties pending the execution of a division order[11] and a division order was requested before the termination of the Assignment, the lease did not terminate. Kittrell responds that Circle Ridge's argument is incorrect because the division order was not requested until after the forfeiture clause had been breached and the division order contained incorrect terms. We agree that a division order, submitted after the breach of a forfeiture clause, does not excuse the breach.[12]

A division order is "merely the mechanism for payment to a payee of its share of oil and gas proceeds." *Prize Energy Res.*, *L.P. v. Cliff Hoskins, Inc.*, 345 S.W.3d 537, 560 (Tex. App.— San Antonio 2011, no pet.). Division orders are viewed as agreements between the parties. *See Cabot Corp. v. Brown*, 754 S.W.2d 104, 107–08 (Tex. 1987); *see also* TEX. NAT. RES. CODE ANN. § 91.401(3) (West 2011) ("'Division order' means an agreement signed by the payee directing the distribution of proceeds . . . ."). "Although division orders do not supplant the lease

---

[11]The Texas Natural Resources Code permits, under certain circumstances, a payor to condition payment of royalty upon receipt of a signed division order. *See* TEX. NAT. RES. CODE ANN. § 91.402(c)(1) (West 2011).

[12]Because Circle Ridge failed to timely request the division order, it is not necessary for us to decide Kittrell's alternative argument that an incorrect division order does not excuse nonpayment.

contract," division orders are binding until revocation. *Cabot Corp.*, 754 S.W.2d at 107–08; *cf. Heritage Res. v. Nationsbank*, 939 S.W.2d 118, 123 (Tex. 1996) (under unjust enrichment theory, operator is liable, if division order differs from lease, for amount it retains but not for any amounts paid to others).

As noted above, the division order was not requested until after the forfeiture clause had been breached. The overriding royalty payments were due on or before June 28, 2011, but the division order contains an effective date of July 1, 2011, and was dated August 11, 2011. Thus, the division order did not exist until 104 days after receipt of notice and did not even attempt to govern royalty payments during the sixty days following receipt of notice. Circle Ridge does not specify how its breach is excused by the issuance of a division order after the relevant time period.

The San Antonio Court of Appeals has held the Texas Natural Resources Code "places the burden on the payor to submit a division order to the payee for its signature; it is not the royalty owner or mineral interest owner's burden to draft its own division order, sign it, and submit it to the payor." *Prize Energy Res., L.P.*, 345 S.W.3d at 560. The Eastland Court has agreed in a memorandum opinion. *See Jones v. Clem*, No. 11-10-00123-CV, 2012 Tex. App. LEXIS 2473 (Tex. App.—Eastland Mar. 29, 2012, no pet.) (per curiam) (mem. op.) ("[I]n order to rely upon a division order, Jones had the obligation to submit it to the payees for signature."). We agree with the San Antonio and Eastland Courts of Appeals. Circle Ridge had the burden to draft the division order and submit it to Kittrell. Because Circle Ridge failed to submit any

13

division order to Kittrell until after the forfeiture clause had been breached, the lack of a division order did not excuse the non-payment.

## VII. Circle Ridge Has Not Established the Attorney's Fees Award Was Error

Circle Ridge challenges the award of attorney's fees to Kittrell in four ways: (1) the fees were not supported by a designated expert, (2) the fees were not substantiated with hourly time records, (3) the fees were not segregated, and (4) the evidence to support an award of attorney's fees is conclusory.

Circle Ridge argues that "[a] party may not recover attorneys' fees when they have failed to designate an expert witness with regard to such claim[,]" citing *E. F. Hutton & Co. v. Youngblood*, 741 S.W.2d 363, 364 (Tex. 1987). *Youngblood* merely held that an expert witness on attorney's fees must be designated as an expert witness similar to other expert witnesses. *Id*. The Texas Supreme Court has approved of the procedure of using affidavits of the party's attorney to prove attorney's fees. *See Tex. Commerce Bank v. New*, 3 S.W.3d 515, 517 (Tex. 1999).

Further, the failure to designate a testifying expert is a defect of form about which an appellant must object and on which he must obtain a ruling to preserve error. *Expro Ams.*, *LLC v. Sanguine Gas Exploration*, *LLC*, 351 S.W.3d 915, 919–20 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); *Duncan-Hubert v. Mitchell*, 310 S.W.3d 92, 102, 105 (Tex. App.—Dallas 2010, pet. denied). Although Circle Ridge objected in its response, Circle Ridge has directed us to no trial court ruling and our own review has located no such ruling on the objection.

Additionally, Kittrell notes it filed an amended discovery response designating its expert and thereby eliminated any surprise or prejudice. This amended discovery response was filed on August 10, 2012, twenty-five days before the hearing and two months prior to the entry of summary judgment. Circle Ridge directs us to no evidence of surprise or prejudice.

Circle Ridge argues the evidence is insufficient because it did not include "any time records supporting the hours the attorneys claim to have spent on the case." Circle Ridge did not make this objection in its response, and error has not been preserved. *See* TEX. R. APP. P. 33.1. Even if error had been preserved, we disagree that time records were required. In *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012), cited by Circle Ridge, the Texas Supreme Court discussed in detail the lodestar method for calculating attorney's fees based on hourly time records. *Id.* While the Texas Supreme Court recognized the lodestar method as the required method for claims under Section 21.259(a) of the Texas Commission on Human Rights Act and in class-action lawsuits, the opinion does not require the lodestar method in other types of lawsuits. *See id.* The Dallas Court of Appeals has held that "there is no rigid requirement" of hourly time records and has affirmed attorney's fees awards without hourly time records. *See Brockie v. Webb*, 244 S.W.3d 905, 909 (Tex. App.—Dallas 2008, pet. denied). We agree with the Dallas Court of Appeals that time records are not an indispensible element in the calculation of reasonable attorney's fees.

Circle Ridge also complains about the failure to segregate attorney's fees.[13] This objection was made in its response, but we have not been directed to where Circle Ridge obtained a ruling to preserve error on this issue.[14] *Cont'l Dredging, Inc. v. De-Kaizered, Inc.*, 120 S.W.3d 380, 397 (Tex. App.—Texarkana 2003, pet. denied); *see Dulong v. Citibank (S.D.), N.A.*, 261 S.W.3d 890, 893 (Tex. App.—Dallas 2008, no pet.) ("[T]o preserve error on objections to summary judgment evidence, the complainant must secure a ruling on her objection."). Further, Kittrell filed an amended affidavit in response to this objection claiming seventy-five percent of the attorney's fees concerned the declaratory judgment.[15]

Finally, Circle Ridge argues, "Kittrell's summary judgment evidence consisted only of broad conclusory statements." The Texas Supreme Court, though, has recently held an affidavit is not conclusory merely because it lacks specifics and, if uncontroverted, can be sufficient evidence. *Garcia v. Gomez*, 319 S.W.3d 638, 641 (Tex. 2010). As held in *Garcia*, summary judgment can be granted on the testimony of an interested witness if the testimony could have been readily controverted. *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 163 (Tex. 2004); *Casso*

---

[13]A party seeking to recover attorney's fees must segregate those fees attributable to different parties or causes, except "when the attorney's fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their 'prosecution or defense entails proof or denial of essentially the same facts.'" *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 11 (Tex. 1991) (quoting *Flint & Assoc. v. Intercontinental Pipe & Steel, Inc.*, 739 S.W.2d 622, 624–25 (Tex. App.—Dallas 1987, writ denied)).

[14]Kittrell raised this issue at the summary judgment hearing, but Circle Ridge did not respond and no ruling was obtained.

[15]Kittrell also filed a motion for leave to file the amended affidavit. In its reply brief, Circle Ridge argues that because there is no explicit granting of leave, we must ignore the amended affidavit. The amended affidavit was filed more than twenty-one days before the hearing, and, therefore, was not late under Rule 166a(c) of the Texas Rules of Civil Procedure. *See* TEX. R. CIV. P. 166a(c). Because the affidavit was not late, Kittrell did not need leave of the court to file it, and it is unnecessary for us to determine whether leave was implicitly granted by the award of attorney's fees consistent with the amended affidavit. *See Benchmark Bank v. Crowder*, 919 S.W.2d 657, 663 (Tex. 1996) (presumption leave not granted when nothing in record indicates trial court considered late-filed evidence).

16

*v. Brand*, 776 S.W.2d 551, 558 (Tex. 1989). Following the Texas Supreme Court's opinion in *Garcia*, we conclude Kittrell's uncontroverted affidavit constitutes sufficient evidence.

We overrule all of Circle Ridge's complaints concerning attorney's fees.

## VIII. Genuine Issues of Material Fact Exist Concerning the Date of Termination

Kittrell argues that because its August 30, 2011, letter unambiguously communicated an intent to terminate the Assignment, the Assignment terminated on August 30, 2011. Circle Ridge claims the "remains undecided" language of the October 4, 2011, letter is some evidence that the Assignment was not terminated on August 30 but on November 21, 2011, and argues, "[A]n effective notice simply gave Kittrell the right to evict Circle Ridge at some later date."

The first step in the analysis is to determine whether the disputed contract provision is a condition subsequent, a special limitation, or a covenant.[16] *Vinson Minerals, Ltd.*, 335 S.W.3d at 354 n.12; s*ee W.T. Waggoner Estate v. Sigler Oil Co*., 19 S.W.2d 27, 31 (Tex. 1929); *Blackmon v. XTO Energy*, *Inc.*, 276 S.W.3d 600, 605 (Tex. App.—Waco 2008, no pet.). In making this determination, we cannot add terms, and "doubts should be resolved in favor of a covenant instead of a condition." *Rogers v. Ricane Enters., Inc*., 772 S.W.2d 76, 79 (Tex. 1989). A special limitation divests the grantee automatically. *Field v. Shaw*, 535 S.W.2d 3, 5 (Tex. App.—Amarillo 1976, no writ). A condition subsequent gives grantor the right to terminate the

---

[16]We recognize neither Kittrell nor Circle Ridge briefs the issue of the type of contract provision in dispute. Both parties, though, cite caselaw concerning covenants, special limitations, and conditions subsequent. Some of the differences between these cases depend on the type of contract provision in dispute. We are required to address this issue because it is necessary to reconcile the various cases cited by the parties. We further note both parties cited *Coastal Oil & Gas Corp. v. Roberts*, 28 S.W.3d 759, 763 (Tex. App.—Corpus Christi 2000, pet. granted, judgm't vacated w.r.m.), in their briefs, and *Coastal Oil* was extensively discussed during oral argument. *Coastal Oil* has been vacated and is merely persuasive authority. *See State ex rel. Dishman v. Gary*, 359 S.W.2d 456 (Tex. 1962) (orig. proceeding) (vacated opinion lacks any precedential value). Because the parties have provided us with other precedents, it is not necessary for us to rely on *Coastal Oil* as persuasive authority.

17

leasehold estate upon the occurrence of an event but must be exercised by re-entry. *Id.*; *Eyssen v. Zeppa*, 100 S.W.2d 417 (Tex. Civ. App.—Texarkana 1936, writ ref'd); *Gutierrez v. Rodriguez*, 30 S.W.3d 558, 560 (Tex. App.—Texarkana 2000, no pet.). Except in extraordinary circumstances, a covenant only subjects the breaching party to monetary damages. *See Anadarko Petroleum Corp. v. Thompson*, 94 S.W.3d 550, 560 (Tex. 2003); *Rogers*, 772 S.W.2d at 79.

As argued by Circle Ridge, an overriding royalty is normally considered a covenant and does not result in forfeiture. *See Vinson Minerals*, 335 S.W.3d at 354. "'[F]ew leases are found in which the nonpayment of royalty is a condition subsequent and rarer still is the lease in which it operates as a special limitation.'" *Blackmon*, 276 S.W.3d at 606 (quoting Linton E. Barbee, *The Lessor's Remedies for Nonpayment of Royalty*, 45 TEX. L. REV. 132, 159 (1966)).

The assignment of the lease in this case, though, contains a clause not contained in most leases. The clause provides:

> Assignor may give Assignee written notice of nonpayment of the overriding royalty (via certified mail to addressed Assignee at the address shown herein.), and if Assignor's overriding royalty is not paid on or before expiration of sixty (60) days from Assignee's receipt of such notice, Assignor may terminate this agreement and evict Assignee forthwith.

Because this term provides for termination, the clause must be either a condition subsequent or a special limitation rather than a covenant. The clause makes the termination discretionary with the Assignor. The use of the word "may" indicates the Assignor has discretion to either exercise the right or not to exercise the right. Because the Assignor must exercise the right to effectuate a termination, the plain language of the clause establishes that it is a condition subsequent.

18

Although "[c]ourts will not declare a forfeiture unless they are compelled to do so by language which can be construed in no other way,"[17] the clause in this lease is clear and precise and can be construed in no other way than to be a condition subsequent.

The termination of the Assignment in this case is not just a contract dispute but rather a reversion of an interest in real property.[18] As explained by the Texas Supreme Court:

> In Texas it has long been recognized that an oil and gas lease is not a "lease" in the traditional sense of a lease of the surface of real property. In a typical oil or gas lease, the lessor is a grantor and grants a fee simple determinable interest to the lessee, who is actually a grantee. Consequently, the lessee/grantee acquires ownership of all the minerals in place that the lessor/grantor owned and purported to lease, subject to the possibility of reverter in the lessor/grantor. The lessee's/grantee's interest is "determinable" because it may terminate and revert entirely to the lessor/grantor upon the occurrence of events that the lease specifies will cause termination of the estate.

*Natural Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 192 (Tex. 2003) (citations omitted). As noted above, a condition subsequent only terminates an oil and gas lease upon re-entry or the filing of a lawsuit seeking re-entry. *Vinson Minerals*, *Ltd.*, 335 S.W.3d at 354; *see W.T. Waggoner Estate*, 19 S.W.2d at 31.

Kittrell has failed to establish as a matter of law that the lease terminated on August 30, 2011, because at that time, there had been no re-entry.[19] "Under Texas summary judgment law,

---

[17]*Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987); *Vinson Minerals, Ltd.*, 335 S.W.3d at 354; *see Fox v. Thoreson*, 398 S.W.2d 88, 92 (Tex. 1966) (special limitation must be "clear and precise and so unequivocal in nature that it can reasonably be given no other meaning").

[18]Kittrell argues that *Blackmon* is distinguishable from this case because it involved the termination of a lease instead of the termination of an assignment. *See Blackmon*, 276 S.W.3d at 605. An assignment of an oil and gas lease is still a transfer of an interest in real property, and we do not believe *Blackmon* is distinguishable on this basis.

[19]The parties have not argued the date of termination depends on when re-entry occurred. Both sides, though, have cited cases to this Court and to the trial court which explain the re-entry requirement. Both Circle Ridge and Kittrell cite *Rogers*, 772 S.W.2d at 79 on appeal. Circle Ridge also cites *Vinson Minerals*, 335 S.W.3d at 354, and

19

the party moving for summary judgment carries the burden of establishing that no material fact issue exists and that it is entitled to judgment as a matter of law." *Willrich*, 28 S.W.3d at 23 (noting "the nonmovant need not respond to the motion to contend on appeal that the movant's summary judgment proof is insufficient as a matter of law to support summary judgment."). While Kittrell had declared the assignment terminated, no re-entry had yet occurred and no lawsuit had been filed. Re-entry did not occur until Kittrell locked the gates and prevented Circle Ridge from continuing to produce.

The trial court erred in finding that the forfeiture occurred on August 30, 2011. Kittrell's November 21, 2011, letter confirms the re-entry had recently occurred, but does not specify the exact date of re-entry. We agree with Circle Ridge that genuine issues of material fact exist concerning the date of termination.

## IX. The Record Conclusively Establishes that Circle Ridge Did Not Trespass

Circle Ridge also contends the trial court erred in concluding as a matter of law that Circle Ridge was a bad-faith trespasser[20] and in awarding Kittrell trespass damages. We agree.

---

*Blackmon*, 276 S.W.3d at 605. Further, Circle Ridge argued to both the trial court and this Court that the termination did not occur until November 21, 2011, and also cited *Vinson Minerals*, 335 S.W.3d at 353, to the trial court.

[20]Kittrell argues Circle Ridge was a bad-faith trespasser as a matter of law because Circle Ridge continued to produce after receiving its August 30, 2011, letter announcing the lease was terminated. This Court and the San Antonio Court of Appeals have held that a producer who continues activities on the property after the filing of a lawsuit is a bad-faith trespasser as a matter of law. *See Moore v. Jet Stream Invs., Ltd.*, 261 S.W.3d 412, 428 (Tex. App.—Texarkana 2008, pet. denied); *Mayfield v. De Benavides*, 693 S.W.2d 500, 504 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.). There was no lawsuit pending at any time Circle Ridge conducted activities on the lease. Further, since our decision in *Moore*, the Texas Supreme Court has held that the ultimate issue is one of equity which should be decided by the trial court using a case-by-case equity analysis. *Wagner & Brown, Ltd. v. Sheppard*, 282 S.W.3d 419, 428 (Tex. 2008) (noting examples of relevant considerations, including whether termination was intentional, whether there was offer to immediately reinstate lease, length of time lease in effect, and whether "denying reimbursement would work a substantial forfeiture").

As discussed above, the Assignment terminated upon Kittrell's re-entry. The record conclusively establishes that Circle Ridge did not conduct activities on the lease after Kittrell's re-entry. The trial court erred in awarding Kittrell trespass damages. Although entitled to recover its overriding royalty interest from August 30, 2011, until the date of re-entry, Kittrell is not entitled to recover trespass damages.

## X. The Trial Court's Failure to Recognize Kittrell's Concession on Personal Property and Well Casing Was Error

Circle Ridge claims the trial court committed reversible error by refusing to permit the removal of its personal property from the well site. In its motion for summary judgment, Kittrell agreed that Circle Ridge had the right to remove its equipment other than the well casing and agreed to pay salvage value for the well casing. Circle Ridge complained in its response that it had been denied access "to its personal property and equipment on the lease. The value of such personal property and equipment exceeds $100,000.00."

We agree with Circle Ridge that the trial court erred in failing to award Circle Ridge the right to recover its personal property remaining at the well site[21] and, if the well casing cannot be removed without damaging the well, damages in the amount of the market value of the well casing minus the cost of removal. *See Moore*, 261 S.W.3d at 428; *Fike v. Riddle*, 677 S.W.2d 722, 727 (Tex. App.—Tyler 1984, no writ). On remand, the trial court should order return of the

---

[21]Although we have deleted the $9,380.00 award for the 113 barrels of oil remaining at the well site as trespass damages, we note this oil was the personal property of Circle Ridge. Both parties agree these 113 barrels had been extracted by November 21, 2011, and, once removed from the ground, oil is personal property. Since Circle Ridge did not trespass, Circle Ridge is entitled to recover possession of the 113 barrels of oil or the value of the 113 barrels of oil. We further note Kittrell is entitled to an award of its overriding royalty interest on these barrels.

personal property belonging to Circle Ridge at the well site and, if removal would damage the well, damages for the well casing.

## XI.    Conclusion

We affirm the judgment of the trial court in part and reverse in part. We affirm the summary judgment determining that (1) Circle Ridge breached the forfeiture clause, (2) Kittrell provided notice in strict compliance with the Assignment, (3) the lease was forfeited, (4) the lack of a division order did not excuse Circle Ridge's non-payment, and (5) the tendering of royalty payments more than sixty days after notice did not excuse the non-payment.[22] We reject Circle Ridge's argument that the summary judgment was rendered on grounds not contained in the summary judgment motion and that the award of attorney's fees to Kittrell was improper. We affirm the trial court's award of $7,576.75 in overriding royalty proceeds and $8,166.00 in attorney's fees.

The trial court, though, erred in determining that the forfeiture occurred on August 30, 2011. The forfeiture occurred when Kittrell re-entered the property on or about November 21, 2011. Genuine issues of material fact exist concerning the exact date of re-entry. The record, however, conclusively establishes that Circle Ridge did not continue activities on the lease after Kittrell's re-entry. Therefore, the trial court erred in awarding damages for trespass. We reverse the trial court's award to Kittrell as trespass damages of $45,960.62 in lease proceeds and $9,380.00 for the value of the oil in the tanks. We remand the case to the trial court for the limited purpose of determining the exact date of re-entry and calculating the amount of the

---

[22]These issues have been fully litigated and determined on appeal. Consequently, the law of the case doctrine prohibits re-litigation of these issues on remand. *See Briscoe v. Goodmark Corp*., 102 S.W.3d 714, 716 (Tex. 2003).

overriding royalty owed Kittrell from August 30, 2011, until the date of re-entry. On remand, the trial court should give effect to Kittrell's concession that Circle Ridge is entitled to the personal property located at the well site, including the 113 barrels of oil, and, if the well casing cannot be removed without damaging the well, should determine the value Kittrell owes Circle Ridge for the well casing.

Jack Carter
Justice

Date Submitted: May 15, 2013
Date Decided: July 17, 2013