

# NUMBER 13-21-00083-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN RE FARMERS TEXAS
## COUNTY MUTUAL INSURANCE COMPANY

### On Petition for Writ of Mandamus.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Tijerina**
**Memorandum Opinion by Justice Tijerina**[1]

Real party in interest Carlota Lozano brought the underlying case[2] against her

automobile insurer, relator Farmers Texas County Mutual Insurance Company (Farmers),

---

[1] *See* Tex. R. App. P. 47.4 (distinguishing opinions and memorandum opinions); *id.* R. 52.8(d) ("When granting relief, the court must hand down an opinion as in any other case," but when "denying relief, the court may hand down an opinion but is not required to do so.").

[2] This original proceeding arises from trial court cause number C-0175-19-I in the 398th District Court of Hidalgo County, Texas, and the respondent is the Honorable Keno Vasquez. *See generally* Tex. R. App. P. 52.2.

asserting claims based on statutory violations of the Texas Insurance Code. She alleged that her lawsuit was "derived from, but not caused by" her claim for uninsured/underinsured motorist (UIM) benefits with Farmers "that was summarily rejected without an adequate and/or a reasonable evaluation as required by the Texas Insurance Code."[3] By four issues, Farmers contends that the trial court abused its discretion by denying Farmers's plea to the jurisdiction and, alternatively, motion to abate, on the basis that Lozano has not yet obtained a judgment establishing the liability and underinsured status of the other motorist. We conditionally grant mandamus relief.

## I. BACKGROUND

The underlying lawsuit arose from a motor vehicle accident that occurred on or about January 12, 2017, involving Lozano and the underinsured driver of another vehicle. The other driver is not a party to the lawsuit or this original proceeding. In Lozano's "Fourth Amended Original Petition and Written Discovery to [Farmers]," filed solely against Farmers, Lozano alleged, in relevant part:

> 6.  This action is derived from, but not caused by, [Lozano's] filed claim for UIM benefits under a UIM insurance policy [Lozano] entered into with [Farmers] that was given short shrift, without an adequate and/or a reasonable evaluation as required by the Texas Insurance Code. [Lozano] was injured in a motor vehicle collision on or about January 12, 2017. She incurred "*Escobedo*"[4]medical expenses in excess of $51,000.00, with

---

[3] The insurance code defines "uninsured or underinsured motorist coverage" as:

[T]he provisions of an automobile liability insurance policy that provide for coverage . . . that protects insureds who are legally entitled to recover from owners or operators of uninsured or underinsured motor vehicles damages for bodily injury, sickness, disease, or death, or property damage resulting from the ownership, maintenance, or use of any motor vehicle.

TEX. INS. CODE ANN. § 1952.101(a); *see also In re Luna*, No. 13-16-00467-CV, 2016 WL 6576879, at *1 (Tex. App.—Corpus Christi–Edinburg Nov. 7, 2016, orig. proceeding) (mem. op.).

[4] We assume that Lozano refers to *Haygood v. De Escabedo*, 356 S.W.3d 390, 391 (Tex. 2011), in which the Texas Supreme Court held that damages for medical or health care expenses incurred as a result of wrongful personal injury are limited to expenses that the provider has a legal right to be paid. *See id.*

2

future medical expenses estimated over $87,000.00. In addition to the medical expenses, [Lozano] sustained significant physical and mental injuries that she continues to suffer from to the day of this filing.

7.      The third-party tortfeasor had no liability insurance to cover the damages sustained by [Lozano] resulting from the January 12, 2017 subject collision. [Lozano] formally notified [Farmers] on or about January 26, 2017 that the third-party tortfeasor was uninsured at the time of the subject collision and that she was making a claim under her own uninsured policy with [Farmers].[5]

9.      On August 11, 2017, [Lozano] sent a package of all documents necessary to evaluate [Lozano's] claims to [Farmers]. On September 13, 2017, Kyla Rippey, an adjuster employed by and on behalf of [Farmers], sent a letter offering [Lozano] a settlement that totaled less than the medical expenses [Lozano] had incurred up to that point. In other words, Kyla Rippey, on behalf of [Farmers] offered an amount that didn't even cover [Lozano's] incurred medical expenses, let alone anything for the documented future medical expenses [Lozano] was, within reasonable medical probability, anticipated to incur, or past and future physical pain and suffering and mental anguish. In that letter, Kyla Rippey failed to explain the facts or basis for the decision made after her "evaluation" of [Lozano's] uninsured claim. Kyla Rippey's dismissive, superficial and/or cursory response to [Lozano's] uninsured claim violated several sections of the Texas Insurance Code, and proximately caused [Lozano] to sustain new and independent compensable injuries and damages.

## V. TEXAS INSURANCE CODE CLAIMS AGAINST DEFENDANT

10.      [Lozano] is not seeking any of the proceeds of the uninsured insurance policy entered into with [Farmers] for [Farmers's] Texas Insurance Code violations. To be clear, the facts giving rise to [Lozano's] statutory claims and damages in this case are not derived from the January 12, 2017 collision itself, but rather the adjuster's actions and violations of [TEX. INS. CODE ANN.] § 541.061 et seq., which resulted in new and independent injuries and damages to [Lozano], including these specific violations:

11.      VIOLATION OF § 541.060(a)(2): Kyla Rippey is required by the Texas Insurance Code § 541.060(a)(2) "to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear." The liability of [Farmers] under the uninsured policy is reasonably clear given the liability facts in this case. What is also clear is that the final decision made by Kyla

_____

[5] The petition as contained in our record does not contain a paragraph number eight.

Rippey on behalf of [Farmers] was not a good faith attempt to effectuate a prompt, fair and equitable settlement of [Lozano's] claims given the amount of [Lozano's] "specials."

12.    VIOLATION OF § 541.060(a)(3): Furthermore, the letter authored by Kyla Rippey violated § 541.060(a)(3) because she did not provide "a reasonable explanation of the basis in the policy, in relation to the facts or applicable law" for the decision she made. In fact, Kyla Rippey's letter containing the response to the 541 demand[6] contained an extremely vague explanation that 'We've evaluated your client's claim based on the information presented' . . . and offered an amount that was less than the medical expenses incurred without any kind of explanation as to why such an offer was made. This is a violation of [TEX. INS. CODE ANN.] § 541.060(a)(3).

13.    VIOLATION OF § 541.060(a)(7): Furthermore, the letter authored by Kyla Rippey violated §541.060 (a)(7) because she refused ". . . to pay on a claim without conducting a reasonable investigation with respect to the claim." Nothing in Kyla Rippey's letter containing the response to [Lozano's] 541 settlement demand mentioned what, if anything, was done to investigate [Lozano's] claim. This is a violation of [TEX. INS. CODE ANN.] § 541.060(a)(7).

14.    The foregoing violations were committed knowingly by and on behalf of [Farmers]. When [Lozano] was advised of [Farmers's] Texas Insurance Code violations, in effect failing to adhere to [Farmers's] statutory obligations to [Lozano] after [Lozano] honored her duties under the parties' insurance contract, she became visibly and physically angry, upset[,] and indignant. The foregoing violations were a producing cause of [Lozano's] new and independent injuries and damages.

15.    RESPONDEAT SUPERIOR—At the time of the incident, Kyla Rippey was in the scope and course of [her] employment with and furthering the business of [Farmers]. Therefore, based on the doctrine of Respondeat Superior, [Farmers] is liable for the insurance code violations of its employee, Kyla Rippey.

Lozano sought actual damages under Texas Insurance Code §§ 541.151 and 541.152, including past and future medical expenses, pain, suffering and medical anguish, and

---

[6] Although the term "541 demand" is not defined in Lozano's pleadings, we presume it refers to the "prior notice of action" required by the Texas Insurance Code. *See* TEX. INS. CODE ANN. § 541.154(a) ("A person seeking damages in an action against another person under this subchapter must provide written notice to the other person not later than the 61st day before the date the action is filed.").

4

further sought court costs, attorney's fees, and treble damages. *See* TEX. INS. CODE ANN. § 541.151 (authorizing a private cause of action for damages); *id.* § 541.152 (allowing a person who prevails in an action to obtain "the amount of actual damages, plus court costs and reasonable and necessary attorney's fees," "an order enjoining the act or failure to act complained of," or "any other relief the court determines is proper").

On April 24, 2020, Farmers filed a "Plea to the Jurisdiction, or in the Alternative, Motion to Abate." Farmers alleged that it was under no duty to pay until Lozano obtained a judgment establishing the liability and underinsured status of the other motorist. Farmers argued that the trial court lacked subject matter jurisdiction because Lozano had not met the prerequisites to establish UM/UIM coverage. Farmers asserted that Lozano lacked standing and her bad faith claims were not ripe, and thus the trial court should dismiss the claim for lack of subject matter jurisdiction, or alternatively, abate the lawsuit until Lozano obtained a judgment establishing the liability of the tortfeasor and the amount of her damages, "which is a prerequisite to making extracontractual claims."

On July 10, 2020, Lozano filed a "Response to [Farmers's] Plea to the Jurisdiction, or in the Alternative Motion to [Abate]." She alleged she was not raising contractual claims, which would require that her legal entitlement to UIM benefits be established by judicial ruling but was instead asserting extra-contractual tort claims, which did not require such a judgment.

On August 26, 2020, the trial court denied Farmers's plea and motion to abate. This original proceeding ensued. By four issues, Farmers contends: (1) an insured like Lozano does not have ripe bad-faith claims against her carrier for failure to investigate or promptly pay her UIM claim when she has not yet established legal entitlement to UIM

5

benefits nor has she alleged an independent injury; (2) an insured does not have standing to bring extra-contractual claims based on alleged insurance code violations on the handling of a UIM claim before the UIM claim is legally "presented" to her carrier; (3) the trial court abused its discretion by denying Farmers's "Plea to the Jurisdiction, or in the Alternative Motion to Abate" Lozano's extra-contractual claims, allowing discovery on unripe extra-contractual claims, prejudicing Farmers in the underlying vehicular negligence case; and (4) Farmers lacks an adequate remedy by appeal.

This Court granted temporary relief, stayed the underlying proceedings, and requested that Lozano, or any others whose interest would be directly affected by the relief sought, file a response to the petition for writ of mandamus. *See* TEX. R. APP. P. 52.2, 52.4. Lozano filed a response to the petition for writ of mandamus, and further filed a "Motion to Strike or Disregard Portions of Relator's Appendix" on grounds that it contained documents which had not been filed with the trial court in the underlying proceeding.

## II. STANDARD OF REVIEW

Mandamus is an extraordinary remedy. *In re H.E.B. Grocery Co.*, 492 S.W.3d 300, 302 (Tex. 2016) (orig. proceeding) (per curiam). Mandamus relief is proper to correct a clear abuse of discretion when there is no adequate remedy by appeal. *In re Christus Santa Rosa Health Sys.*, 492 S.W.3d 276, 279 (Tex. 2016) (orig. proceeding). The relator bears the burden of proving both of these requirements. *In re H.E.B. Grocery Co.*, 492 S.W.3d at 302; *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). An abuse of discretion occurs when a trial court's ruling is arbitrary and unreasonable or is made without regard for guiding legal principles or supporting evidence. *In re*

6

*Nationwide Ins. Co. of Am.*, 494 S.W.3d 708, 712 (Tex. 2016) (orig. proceeding); *Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 578 (Tex. 2012). We determine the adequacy of an appellate remedy by balancing the benefits of mandamus review against the detriments. *In re Essex Ins.*, 450 S.W.3d 524, 528 (Tex. 2014) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding).

### III.    MOTION TO STRIKE

As stated previously, Lozano filed a motion to strike or disregard portions of Farmers's appendix on grounds that portions of the appendix had not been filed in the trial court. Farmers did not file a response to Lozano's motion. "In determining whether a trial court abused its discretion, a reviewing court is generally bound by the record before the trial court at the time its decision was made." *In re M-I L.L.C.*, 505 S.W.3d 569, 574 (Tex. 2016) (orig. proceeding). Thus, with limited exceptions, we review the actions of the trial court based on the record before the court at the time it makes its ruling. *See Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 556 (Tex. 1990) (orig. proceeding); *Sabine OffShore Serv., Inc. v. City of Port Arthur*, 595 S.W.2d 840, 841 (Tex. 1979) (orig. proceeding) (per curiam); *Hudson v. Aceves*, 516 S.W.3d 529, 539–40 (Tex. App.—Corpus Christi–Edinburg 2016, no pet.) (combined app. & orig. proceeding); *In re Taylor*, 113 S.W.3d 385, 392 (Tex. App.—Houston [1st Dist.] 2003, orig. proceeding). Accordingly, we grant Lozano's motion to strike or disregard, and we do not consider the challenged appendix items in our review.

### IV.    DELAY

We next address Lozano's contention that Farmers waived its right to mandamus relief because Farmers delayed filing its petition for writ of mandamus. Although

mandamus is not an equitable remedy, its issuance is controlled largely by equitable principles. *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 676 (Tex. 2009) (orig. proceeding) (per curiam). One such principle is that "[e]quity aids the diligent and not those who slumber on their rights." *Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993) (orig. proceeding) (quoting *Callahan v. Giles*, 155 S.W.2d 793, 795 (Tex. 1941) (orig. proceeding)). To invoke the equitable doctrine of laches, the moving party ordinarily must show an unreasonable delay by the opposing party in asserting its rights and also the moving party's good faith and detrimental change in position because of the opposing party's delay. *In re Laibe*, 307 S.W.3d 314, 318 (Tex. 2010) (orig. proceeding) (per curiam); *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 80 (Tex. 1989); *see also In re Mabray*, 355 S.W.3d 16, 22 (Tex. App.—Houston [1st Dist.] 2010, orig. proceeding [mand. denied]) (explaining that delay alone is insufficient to invoke laches; injury or prejudice must also be established). Whether mandamus is barred by delay is a question of fact that we determine by considering all the circumstances in each case. *In re Mabray*, 355 S.W.3d at 22–23.

The Texas Supreme Court has held that a two-month delay in seeking mandamus relief is not necessarily unreasonable, *In re Laibe*, 307 S.W.3d at 318; *see Strickland v. Lake*, 357 S.W.2d 383, 384 (Tex. 1962) (orig. proceeding), but a four-month delay may be unreasonable absent adequate justification. *See Rivercenter Assocs.*, 858 S.W.2d at 366 (unexplained delay of more than four months); *see also Int'l Awards, Inc. v. Medina*, 900 S.W.2d 934, 936 (Tex. App.—Amarillo 1995, orig. proceeding) (unexplained delay of more than four months). Even a six-month delay will not invoke laches if there exists adequate justification. *In re Int'l Profit Assocs.*, 274 S.W.3d at 676; *see In re SCI Tex.*

8

*Funeral Servs., Inc.*, 236 S.W.3d 759, 761 (Tex. 2007) (orig. proceeding) (per curiam) (holding that a delay of slightly less than six months did not constitute laches because the time was required to obtain records of numerous discovery hearings and brief issues for court).

Here, the trial court signed the subject order on August 26, 2020, and Farmers filed its petition for writ of mandamus on March 19, 2021. Farmers does not discuss or explain the interim between the trial court's order and the inception of this original proceeding. We note that the specific legal issue presented here was pending in the Texas Supreme Court when this petition was filed, and in fact, the supreme court's opinion was handed down the same day that this original proceeding was filed. *See In re State Farm Mut. Auto. Ins.*, Nos. 19-0791 & 19-0792, 2021 WL 1045651, at *1, __ S.W.3d __, __ (Tex. Mar. 19, 2021) (orig. proceeding). We further note that, due to the COVID-19 State of Disaster, requests for relief from deadlines for appellate proceedings should be generously granted. *See*, *e.g.*, *Eighth Emergency Order Regarding COVID-19 State of Disaster*, 597 S.W.3d 844, 844 (Tex. 2020) (order).

In light of this intervening authority, the context for this original proceeding, and the specific facts and circumstances of this case as shown in the record before us, we conclude, by a narrow margin, that the delay was not unreasonable as a matter of law. *See In re Laibe*, 307 S.W.3d at 318. In this regard, we note that Lozano makes no argument regarding any good faith and detrimental change in position because of Farmers's delay, which Lozano would ordinarily be required to establish as the party asserting waiver.[7] *See id.* Thus, while we disapprove of the delay here, we reject Lozano's

---

[7] Lozano's sole argument in this regard is her assertion that "[t]here is no reasonable justification for [Farmers's] delay, which the Court can reasonably infer stemmed from [Farmers's] desire to disrupt the

9

contention that equitable considerations bar our consideration of this petition for writ of mandamus. We now turn to the merits of this original proceeding.

## V.   ANALYSIS

In its first two issues, Farmers asserts that Lozano's claims are not ripe, or stated otherwise, Lozano lacks standing because she has not established legal entitlement to her UIM benefits, and she has not alleged an independent injury. Farmers thus contends that the trial court erred in denying Farmers's plea to the jurisdiction or request for abatement. In contrast, Lozano argues that she is seeking to recover damages for statutory violations that caused an injury independent from the loss of the benefits, and thus she is not required to first establish her right to policy benefits in order to bring her claims.

To recover benefits under a UIM policy, a policy beneficiary must show (1) the insured has UIM coverage, (2) the underinsured motorist negligently caused the accident that resulted in the covered damages, (3) the amount of the insured's damages, and (4) the underinsured motorist's insurance coverage is deficient. *See Brainard v. Trinity Universal Ins.*, 216 S.W.3d 809, 818 (Tex. 2007); *State Farm v. Nickerson*, 216 S.W.3d 823, 824 (Tex. 2006); *Henson v. S. Farm Bur. Cas. Ins.*, 17 S.W.3d 652, 654 (Tex. 2000); *In re Liberty Cnty. Mut. Ins.*, 537 S.W.3d 214, 220 (Tex. App.—Houston [1st Dist.] 2017, orig. proceeding); *In re Progressive Cnty. Mut. Ins.*, 439 S.W.3d 422, 426–27 (Tex. App.— Houston [1st Dist.] 2014, orig. proceeding). Accordingly, "a claim for UIM benefits is not presented until the trial court signs a judgment" resolving these issues. *Brainard*, 216 S.W.3d at 818; *see In re Liberty Cnty. Mut. Ins.*, 537 S.W.3d at 220.

---

April 26 trial setting and the necessary trial preparation leading up to that date." Lozano does not otherwise offer argument, authority, or evidence in support of her contention regarding delay.

10

"An insured must first establish that the insurer is liable on the contract before the insured can recover on extra-contractual causes of action against an insurer for failing to pay or settle an underinsured motorist insurance claim." *In re Liberty Cnty. Mut. Ins.*, 537 S.W.3d at 220–21; *see In re Allstate Cnty. Mut. Ins.*, 447 S.W.3d 497, 501 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding). Accordingly, extra-contractual claims may require severance and abatement until the breach of contract claim is determined. *See*, *e.g.*, *In re Allstate Cnty. Mut. Ins.*, 447 S.W.3d at 501; *In re Progressive Cnty. Mut. Ins.*, 439 S.W.3d at 426–27. The Fourth Court of Appeals explained its rationale for this determination as follows:

> [The insurer] is under no contractual duty to pay UIM benefits until [the insured] establishes the liability and underinsured status of the other motorist. Therefore, [the insurer] should not be required to put forth the effort and expense of conducting discovery, preparing for a trial, and conducting voir dire on bad faith claims that could be rendered moot by the portion of the trial relating to UIM benefits. To require such would not do justice, avoid prejudice, and further convenience. Under these circumstances, we conclude the trial court abused its discretion in bifurcating the case instead of severing and abating the UIM claim from the bad faith claims.

*In re United Fire Lloyds*, 327 S.W.3d 250, 256 (Tex. App.—San Antonio 2010, orig. proceeding) (internal citations omitted); *see U.S. Fire Ins. v. Millard*, 847 S.W.2d 668, 673 (Tex. App.—Houston [1st Dist.] 1993, orig. proceeding). Further, severance of contractual claims from extra-contractual claims may be required when an offer of settlement has been made by the insurer. *See Liberty Nat'l Fire Ins. v. Akin*, 927 S.W.2d 627, 630 (Tex. 1996) (orig. proceeding); *In re Am. Nat'l Cnty. Mut. Ins.*, 384 S.W.3d 429, 434 (Tex. App.—Austin 2012, orig. proceeding). When a settlement offer has been made, the parties have conflicting and competing interests in excluding and admitting evidence of the offer of settlement:

Absent severance, an insurer is presented with a "Catch–22" in that its decision to admit or exclude evidence of a settlement offer jeopardizes the successful defense of the other claim. For instance, in defending against a contract claim, the insurer will insist on exercising its right to exclude evidence of a settlement offer to negate liability. Conversely, in defending against extra-contractual claims, an insurer will insist on exercising its right to admit evidence of a settlement offer to negate liability. Thus, by having to defend against these two types of claims simultaneously and before the same jury absent severance, an insurer is prejudiced to such an extent that a fair trial is unlikely. Under such a scenario, the trial court has no choice but to sever in order to protect the fairness of the proceedings and the interests of the parties.

*In re State Farm Mut. Auto. Ins.*, 395 S.W.3d 229, 234 (Tex. App.—El Paso 2012, orig. proceeding) (internal citations omitted); *see In re Am. Nat'l Cnty. Mut. Ins.*, 384 S.W.3d at 434–35; *In re Allstate Ins.*, 232 S.W.3d 340, 343 (Tex. App.—Tyler 2007, orig. proceeding); *see U.S. Fire Ins.*, 847 S.W.2d at 673.

In light of the Supreme Court of Texas's recent opinion in *In re State Farm Mutual Automobile Insurance Co.*, we conclude the trial court abused its discretion in failing to grant Farmers's alternative request for abatement. 2021 WL 1045651, at *1–8. In *State Farm*, the real parties in interest, Dodds and Nicastro, were injured in separate automobile accidents with third parties. *Id.* at *1–2. They each settled with the third parties' insurers and then made claims with State Farm for the policy limits of their UIM coverage, $50,000 in Dodds' case and $100,000 in Nicastro's case. *Id.* State Farm paid Dodds $18,190.41, but it did not explain the reason for the discrepancy between the amount paid and the amount requested, and State Farm denied Nicastro's UIM claim in its entirety. *Id.*

Dodds and Nicastro filed lawsuits against State Farm and its adjusters alleging that they violated the Texas Insurance Code by failing "to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear," and failing to "promptly provide to a policyholder a

12

reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim." *Id.* at *2 (quoting TEX. INS. CODE ANN. § 541.060(a)(2)(A), (a)(3)). Dodds and Nicastro did not include any claims for alleged breaches of the UIM policies. *Id.*

State Farm filed motions to abate the claims and to bifurcate the cases to hold separate trials to determine the liability and underinsured status of the third parties. *Id.* The trial courts denied the motions. *Id.* State Farm sought review by petitions for writ of mandamus in the Fifth Court of Appeals, but that court denied relief. State Farm pursued further review in our supreme court. The Texas Supreme Court framed the issue, and its holding in these cases, as follows:

> These original proceedings arise from suits by holders of underinsured motorist ("UIM") insurance seeking recovery against their insurers following traffic accidents. Plaintiffs in such cases often bring claims for breach of their insurance policies as well as statutory, extracontractual claims authorized by the Insurance Code. The common practice has been to sever and abate the Insurance Code claims while an initial trial is conducted on the breach-of-contract claim to determine whether the underinsured motorist was liable for the accident and, if so, the amount of damages suffered by the insured. A plaintiff who succeeds in this first phase of the case may then proceed to litigate its Insurance Code claims in light of the result of the initial trial.

> A wrinkle in the cases before us is that the insureds did not sue for breach of their insurance policies. Although they seek recovery of the amount they claim to be owed under their policies, they brought only extracontractual, Insurance Code claims. They contend that because they brought only statutory claims, and because there are no breach-of-contract claims to sever and try first, no bifurcation of trial is required. As explained below, we disagree.

> Under *USAA Texas Lloyds v. Menchaca*, 545 S.W.3d 479 (Tex. 2018), a plaintiff seeking recovery of benefits owed under an insurance policy must first establish his entitlement to policy benefits as a contractual matter before he can recover them as damages for an Insurance Code claim. As a result, although the plaintiffs' claims in these cases are not labeled breach of contract, they nevertheless must establish State Farm's liability under

13

their insurance policies as a prerequisite to recovery on their Insurance Code claims. Just as an initial "car crash" trial is typically required to determine the underinsured motorist's liability and the amount of damages when the insured brings both breach-of-contract and Insurance Code claims, insureds who bring only Insurance Code claims seeking policy benefits as damages must also succeed in an initial "car crash" trial in order to lay the predicate for their statutory claims.

*In re State Farm Mut. Auto. Ins.*, 2021 WL 1045651, at *1. In reaching its conclusion, the supreme court reiterated that there are two paths an insured may take to establish the damages caused by an insurer's violation of the Insurance Code. *Id.* at *3. The insured must establish either (1) "a right to receive benefits under the policy" or (2) "an injury independent of a right to benefits." *Id.* at *3 (quoting *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 500 (Tex. 2018)). Relying on the second path, Dodds and Nicastro alleged that State Farm caused them independent injuries by violating the insurance code. *Id.* at *4. However, the supreme court explained that Nicastro and Dodds failed to allege facts supporting an independent injury:

> Relying on *Menchaca*'s second path, Nicastro and Dodds allege State Farm caused them independent injuries by violating the Insurance Code. We continue to recognize "the possibility that in denying [a] claim, the insurer may commit some act, so extreme, that would cause injury independent of the policy claim." [*Republic Ins. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995)]. To establish "injury independent of the policy claim," however, Nicastro and Dodds must show their "damages are truly independent of [their] right to receive policy benefits." *Menchaca*, 545 S.W.3d at 500. In other words, to recover under an independent-injury theory, the insureds must establish that State Farm's statutory violations caused an injury apart from State Farm's failure to pay as much as the insureds believe they should have been paid under their UIM policies.
>
> Here, however, the only injury Nicastro and Dodds assert is State Farm's failure to adequately pay them under their UIM policies. They seek, as damages for their Insurance Code claims, the amount they believe State Farm should have offered or paid under the policies. This is precisely the theory of recovery *Menchaca* foreclosed in the absence of a right to policy benefits: "When an insured seeks to recover damages that are predicated on, flow from, or stem from policy benefits, the general rule applies and

14

> precludes recovery unless the policy entitles the insured to those benefits."
> *Id.*
>
> Nicastro and Dodds emphasize that their claims under the Insurance Code are not premised on the denial of benefits. Instead, they are premised on the failure to offer a reasonable settlement and the failure to explain the denial of benefits. True, the claims are premised on State Farm's violations of the Insurance Code, not its violations of the UIM policies. But as explained in *Menchaca* and prior cases, when it comes to damages, the question is not whether the insured's claims are independent of the right to receive policy benefits. The question is whether the alleged "*damages* are truly independent of the insured's right to receive policy benefits." *Id.* at 499–500 (emphasis added); *see also* [*Provident Am. Ins. v. Castaneda*, 988 S.W.2d 189, 198 (Tex. 1998)] ("[N]one of the actions or inactions of Provident American was the producing cause of any damage separate and apart from those that would have resulted from a wrongful denial of the claim.").
>
> Again, the only damages claimed by Nicastro and Dodds are predicated on State Farm's obligation to pay them under their UIM policies. Said otherwise, the insureds' theory of damages is that if State Farm had followed the Insurance Code, it would have paid more in UIM benefits than it did. These are not "damages [that] are truly independent of the [] right to receive policy benefits." *Id.* To the contrary, the insureds' entitlement to these damages is entirely predicated on their entitlement to policy benefits. They assert no injuries independent of the denial or underpayment of benefits. Their statutory claims are merely a means to recoup damages in the amount of a reasonable settlement offer under the policies; they are not "truly independent" of Nicastro's and Dodds' rights to receive policy benefits. *See id.* at 499–500. As a result, the insureds cannot recover for State Farm's alleged Insurance Code violations under an "independent-injury" theory.

*In re State Farm Mut. Auto. Ins.*, 2021 WL 1045651, at *4–5. The Texas Supreme Court further reasoned that because the insureds did not allege damages that were independent of their right to receive policy benefits, the insureds were required to establish their rights to policy benefits in order to recover on their statutory claims. *Id.* at *5. Accordingly, because an insurer's contractual obligation to pay benefits does not arise until liability and damages are determined, the insureds were first required to obtain determinations of the third-party drivers' liability and the amount of their damages before

15

proceeding on their statutory claims. *Id.* The supreme court concluded that when the insured does not allege an independent injury, the appropriate procedure is to hold a bifurcated trial that first determines whether the insurer breached the UIM policy and then, if the insurer breached the policy, determine whether there was a violation of the Insurance Code. *Id.* at *6–7. The court considered that bifurcation was proper because it tends to preserve judicial resources, and evidence of the insurer's settlement offer may be admissible in one phase of the trial but inadmissible in the other. *Id.* The supreme court thus concluded the trial courts abused their discretion by denying State Farm's motions for bifurcated trials and that State Farm did not have an adequate appellate remedy for the trial courts' failure to grant the motions. *Id.* at *7–8 ("When a bifurcated trial is denied in these circumstances, the insurer lacks an adequate appellate remedy for the 'time and money utterly wasted enduring eventual reversal of improperly conducted proceedings.'") (quoting *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136). The supreme court conditionally granted the petitions for writ of mandamus and directed the trial courts to bifurcate the trials of the insurance code claims. *Id.* at *8.

The legal issues and substantive facts of this case are nearly identical to those in *In re State Farm*. Here, Lozano has filed suit based exclusively on violations of the insurance code and has eschewed any claim based on breach of the UIM policy. Two of the three statutory violations that she alleges are identical to those raised in *State Farm*. *See* TEX. INS. CODE ANN. § 541.060(a)(2)(A), (a)(3). An insurer violates § 541.060(a)(2)(A) if it "fail[s] to attempt in good faith to effectuate a prompt, fair, and equitable settlement of . . . a claim with respect to which the insurer's liability has become reasonably clear." *Id.* § 541.060(a)(2)(A). An insurer violates § 541.060(a)(3) by "failing to promptly provide

to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim." *Id.* § 541.060(a)(3). The third violation that Lozano alleges arises under § 541.060(a)(7). An insurer violates this provision by "refusing to pay a claim without conducting a reasonable investigation with respect to the claim." *Id.* § 541.060(a)(7). All three of Lozano's claims are premised on State Farm's violations of the insurance code, not its violations of the UIM policy. But as explained by the Texas Supreme Court, the question is not whether the insured's *claims* are independent of the right to receive policy benefits, but instead whether the alleged *damages* are truly independent of the insured's right to receive policy benefits. *See In re State Farm Mut. Auto. Ins.*, 2021 WL 1045651, at *4; *Menchaca*, 545 S.W.3d at 499–500; *Castaneda*, 988 S.W.2d at 198. Like the insureds in *State Farm*, Lozano asserts no injuries independent of the denial or underpayment of UIM benefits, and her claims are merely a means to recoup damages in the amount of a reasonable settlement offer under the policy and are thus not truly independent of her right to receive policy benefits.

We note that Lozano's case concerns a request for abatement rather than a motion to bifurcate. We conclude that this distinction does not change the analysis as framed by the supreme court. In *State Farm*, the supreme court noted that "the common practice" is to "sever and abate" insurance code claims while an initial trial is conducted on the contract claim to determine whether the third-party motorist was liable for the accident and, if so, the amount of damages suffered by the insured. *In re State Farm Mut. Auto. Ins.*, 2021 WL 1045651, at *1. And the supreme court rejected the argument that there was no breach-of-contract claim to "sever" and no claim to "abate." *Id.* at *7. The court

expressly found that "the logic of the commonly applied sever-and-abate rule applies with equal force here, although the procedural machinations may be slightly different." *Id.* Further, many of the cases referenced by the supreme court in its analysis concerned abatement rather than bifurcation.[8]

Following the supreme court's precedent, we conclude the same. Here, as in *In re State Farm*, Lozano asserted various violations of the Texas Insurance Code, but did not assert a claim for breach of contract. Nevertheless, her claim for damages is predicated on Farmers's obligation to pay her under her UIM policy. These are not damages "truly independent of the right to receive policy benefits." *Id.* at *5. Such statutory claims are "merely a means to recoup damages in the amount of a reasonable settlement offer under the polic[y]." *Id.* Thus, applying *In re State Farm*, we must conclude Lozano has not alleged an injury independent of a right to policy benefits. *Id.* at *3. Therefore, the trial court was required to first determine whether Lozano was entitled to UIM policy benefits before determining whether she can recover those amounts as damages for violations of

---

[8] In reaching its decision, the supreme court noted that it agreed with decisions of many of the intermediate courts of appeals' decisions which required bifurcation of trial in cases where the insurer's liability for statutory claims is predicated on its liability for breach of a UIM policy. *In re State Farm Mut. Auto. Ins.*, Nos. 19-0791 & 19-0792, 2021 WL 1045651, at *6 & n.4, __ S.W.3d __, __ (Tex. Mar. 19, 2021) (orig. proceeding). The exemplar cases cited by the supreme court include cases regarding abatement. *See*, *e.g.*, *In re Colonial Cnty. Mut. Ins.*, No. 01-19-00391-CV, 2019 WL 5699735, at *5 (Tex. App.—Houston [1st Dist.] Nov. 5, 2019, orig. proceeding) (per curiam) (mem. op.) (concluding that the trial court erred in refusing to abate extracontractual claims and ordering the trial court to abate the severed statutory extracontractual claims until resolution of the breach of contract suit); *In re State Farm Mut. Auto. Ins.*, 553 S.W.3d 557, 565 (Tex. App.—San Antonio 2018, orig. proceeding) (concluding that the "trial court erred by not granting the abatement" of extracontractual claims); *In re Germania Ins.*, No. 13-18-00102-CV, 2018 WL 1904911, at *5 (Tex. App.—Corpus Christi–Edinburg Apr. 23, 2018, orig. proceeding) (mem. op.) (concluding that the trial court erred in denying a motion to sever and abate extracontractual claims pending resolution of contract claims); *In re Allstate Fire & Cas. Ins.*, No. 12-17-00266-CV, 2017 WL 5167350, at *4 (Tex. App.—Tyler Nov. 8, 2017, orig. proceeding) (mem. op.) (stating that "extra-contractual claims must be severed and abated until the underinsured motorist breach of contract claim is determined"); *In re State Farm. Mut. Auto Ins.*, 395 S.W.3d 229, 240–41 (Tex. App.—El Paso 2012, orig. proceeding) (ordering the trial court to sever and abate extracontractual claims pending the determination of the contract claim); *In re Am. Nat'l Cnty. Mut. Ins.*, 384 S.W.3d 429, 439 (Tex. App.—Austin 2012, orig. proceeding) (same).

the Insurance Code. *See id.* at *1, 6–7. Accordingly, we conclude that the trial court abused its discretion by denying Farmers's request for abatement. *See id.* at *7–8.[9] We sustain Farmers's first issue.

Farmers argues that it lacks an adequate remedy by appeal because without mandamus relief: (a) Farmers will be required to expend effort and resources defending claims that have not accrued and may be rendered moot by the vehicular negligence case, and (b) the extra-contractual claims will be litigated simultaneously, requiring Farmers to either waive its work product privilege and share its investigation in the vehicular negligence case in order to defend against Lozano's bad faith allegations, or maintain its privilege for the sake of the vehicular negligence case and risk losing the bad-faith causes of action and risk exposure to treble damages. We agree that Farmers lacks an adequate remedy by appeal to address this error. Under almost identical circumstances, the supreme court concluded that the insurer lacked an adequate appellate remedy for the "time and money utterly wasted enduring eventual reversal of improperly conducted proceedings." *In re State Farm Mut. Auto. Ins.*, 2021 WL 1045651, at *8 (quoting *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136). Further, Farmers does not have an adequate remedy by appeal because it stands to lose substantial rights by litigating claims that might be rendered moot and never accrue if Lozano does not prevail on her breach of contract claims, and a fair trial is unlikely if it is forced to litigate both contractual and extra-contractual claims in one trial. *See*, *e.g.*, *In re Farmers Tex. Cnty. Mut. Ins.*, 509 S.W.3d 463, 468 (Tex. App.—Austin 2015, orig. proceeding); *In re Allstate*

---

[9] Our decision here is buttressed by the fact that this case involves pending discovery that is not relevant to preliminary issues under review. *See In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 791 (Tex. 2021) (orig. proceeding) ("A plaintiff may not obtain discovery on an unasserted, abated, or unripe bad-faith claim under the guise of investigating a claim for benefits.").

19

*Cnty. Mut. Ins.*, 447 S.W.3d at 504; *In re United Fire Lloyds*, 327 S.W.3d at 256; *see also In re Germania Ins.*, No. 13-18-00102-CV, 2018 WL 1904911, at *5 (Tex. App.—Corpus Christi–Edinburg Apr. 23, 2018, orig. proceeding) (mem. op.). We sustain Farmers's fourth issue. Having done so, we need not address its remaining issues. *See* TEX. R. APP. P. 47.1; *id.* R. 47.4.

## VI. CONCLUSION

The Court, having examined and fully considered the petition for writ of mandamus, the response, and the applicable law, is of the opinion that Farmers has met its burden to obtain relief. *See In re State Farm Mut. Auto. Ins.*, 2021 WL 1045651, at *1; *In re State Farm Mut. Auto. Ins.,* 623 S.W.3d 526, 530 (Tex. App.—Dallas 2021, orig. proceeding) (concluding that the trial court abused its discretion by denying the insurer's motion for separate trial and abatement of the plaintiff's UIM claims). Accordingly, we lift the stay previously imposed in this case. We conditionally grant relators' petition for writ of mandamus. We direct the trial court to vacate its August 26, 2020 order denying Farmers's request for abatement and direct the trial court to proceed as indicated herein. We are confident the trial court will comply, and the writ will issue only if the trial court fails to do so.

JAIME TIJERINA
Justice

Delivered and filed on the
31st day of August, 2021.

20